**McDANIEL et al. v. NEWTON et al.**

No. 14682.

Court of Civil Appeals of Texas.
Fort Worth.

April 6, 1945.

Rehearing Denied April 27, 1945.

140

Ben D. Clower, J. A. Lantz, and Thos. Y. Banks, all of Dallas, for appellants.

Cecil Murphy, of Gainesville, for appellees.

McDONALD, Chief Justice.

During the year of 1938 the owners of twenty-eight tracts of land in Cooke County executed instruments in writing conveying the royalty interests therein set out to J. D. Howeth and E. C. Mead as trustees. The instruments were printed, with certain blank spaces, which were filled in with typewriting. In said blank spaces were written the names of the respective grantors, the names of the trustees, the fractional interest of the royalty interest being conveyed, the name of the holder of the outstanding oil and gas lease, and certain other items not necessary to describe. The owner or owners of each tract executed a separate instrument, there being twenty-eight of such instruments. The grantors named in six of said instruments are the plaintiffs in this suit. They brought suit to remove the cloud cast on their titles by said instruments, naming as parties defendant the trustees, the owners of the other twenty-two tracts, and other interested parties.

The purpose of the conveyances was to form what might be termed a royalty pool, in order that the owner of each tract might become entitled to a pro rata share of the royalties received from production of oil, gas and other minerals from all lands in the pool.

It is clear that the only interest conveyed is an interest in oil royalty and gas rentals or other royalty due to be paid under such leases. Expressly exempted from the conveyances are delay rentals, or bonuses on future leases.

Following the granting and habendum clauses are the following recitals:

"The foregoing conveyance is in trust for the following uses and purposes, to-wit:

"Section 1. Purpose. The grantors desire to combine the royalty interest hereby conveyed with like royalty interest conveyed and to be conveyed to the Trustee by other grantors in the territory described in Schedule A hereto, upon the same form of contract. It is contemplated that by thus pooling a fractional part of their royalties the grantors will be benefitted in the event oil or gas is found on pool property, regardless of whether oil is found on their property.

"Section 2. Term. If oil or gas is not found on some tract in which royalty has been conveyed to the Trustee, in the territory covered by Schedule A, within five years from the date hereof, all rights conveyed hereby shall revert to the grantors, their heirs or assigns; but, in the event oil or gas is produced on any such tract during the said five year period, the rights granted hereby shall continue so long as oil or gas is produced on any of the pooled tracts. Unless royalty interest in 2000 acres or more have been pooled with the Trustee by similar instruments, on or before Oct. 1st, 1938, this instrument, and all rights thereunder, shall automatically terminate and be of no further effect.

"Section 3. Beneficial Ownership of Pool Property. The Trustee shall, and he hereby agrees to hold the royalty interests heretofore or hereafter conveyed to him by similar conveyances, in trust as follows: (1) An undivided three-fourths of the royalty interests so conveyed, for the use and benefit of the several grantors of royalty interests in said territory, in the proportion which the royalty interest conveyed by them to the Trustee bears to all the royalty interests pooled. (2) An undivided one-fourth of the royalty interest hereby conveyed, for the use and benefit of Earl B. Newton of Pontiac, Michigan, hereinafter called the third party."

Section 4 provides that the trustee shall not collect the proceeds of such royalty, but shall, after production is obtained, execute division orders and other contracts so that payment may be made direct to the grantors named in said instruments or their assigns, for their respective interests in such production. It is not necessary to discuss other sections of the instrument.

On the reverse side of the printed form appears Schedule A, referred to in Section 1. Said schedule names a large number of surveys in Cooke County, and shows the number of acres in each.

The case was tried to the court without a jury. The judgment being for the defendants, the plaintiffs have appealed, presenting four points of error in their brief.

The contention made under the first point is based upon the language contained in Section 2, above quoted, and particularly upon the last sentence in said section, which reads as follows: "Unless royalty interest in 2000 acres or more have been pooled with the Trustee by similar instruments, on or before Oct. 1st, 1938, this instrument, and all rights thereunder, shall automatically terminate and be of no further effect."

Appellants' argument is to the effect that the expression "royalty interest in 2000 acres" means such an aggregation of royalty interests as would be the equivalent of the full one-eighth royalty in 2000 acres. To illustrate, most of the conveyances assigned only one-fourth of the royalty. If all had assigned one-fourth, then, under appellants' theory, the conveyances would have terminated unless the trustees had received, by the named date, conveyances of one-fourth the royalty in 8000 acres. Appellants rely on such cases as State Nat. Bank, Corpus Christi, v. Morgan, 135 Tex. 509, 143 S.W.2d 757, where it is said that the courts judicially know that one-eighth is the usual and customary oil royalty in Texas. They argue that the language of the instrument shows that the parties had in mind the usual one-eighth royalty when employing the language quoted. They argue that the expression "royalty interest in 2000 acres" is the equivalent of "2000 royalty acres." We shall not undertake an interpretation of the term "royalty acre," because that term is not found in the instruments before us. But the expression "royalty interest" is used several times in the instruments, and in none of the other clauses where it is used can it be thought that the expression was intended to designate the entire one-eighth royalty, as distinguished from a fractional part of the royalty. The plain implications are to the contrary. In Section 1 it is recited that "The grantors desire to combine the royalty interest hereby conveyed with like royalty interest conveyed and to be conveyed

to the Trustee by other grantors in the territory described in Schedule A hereto, upon the same form of contract." The term "royalty interest" is here used to denote a fractional part of the royalty, and not the full one-eighth. In Section 3 it is provided that "The Trustee shall, and he hereby agrees to hold the royalty interests heretofore or hereafter conveyed, etc." This refers to fractional interests, rather than the full one-eighth royalty. The term "royalty interest" is used five other times in Section 3, each time with reference to fractional interests.

We see no reason to ascribe to the parties an intention to use such phrase to designate the entire one-eighth royalty in one clause of the conveyance, where they have employed the same expression in many other portions of the instrument to designate a fractional part of the royalty.

■ "Words used in one sense in one part of a contract are as a general rule deemed to have been used in the same sense in another part of the instrument, where there is nothing in the context to indicate otherwise." 17 C.J.S., Contracts, § 303, p. 721.

Appellants argue that the term "royalty interest in 2000 acres" is meaningless unless it designates the one-eighth royalty in 2000 acres, or the equivalent thereof, because otherwise the amount of interest is left undetermined, with the result that the terms of the contract are not sufficiently definite to enable the court to decide whether it has been performed.

The clause in question is one providing for the termination of the grant upon a certain condition. It may be doubted if a clause of uncertain meaning would be sufficient to bring about a termination of the grant. But a reasonable interpretation of the instrument, it seems to us, is that the grant should terminate unless as much as one-fourth of the royalty in 2000 acres should be put into the pool. It is admitted that more than that amount of royalty was put into the pool.

■ The land described in the conveyance from appellants J. M. McDaniel and wife lay in the J. H. Freeman Survey. That survey was not included in the list of lands set out in Schedule A, on the back of the conveyance. Under the second point of error these appellants contend that their land was thus not eligible for the pool, that other members of the pool could properly have refused to share royalties with Mc-

Daniel and wife, that McDaniel and wife could not have laid claim to royalties from the pool, and that their conveyance was thus wholly inoperative from the beginning. Appellants cite no authority in support of their contention. It is not claimed that they executed the instrument as the result of any accident, fraud, or mistake. For aught that appears, all members of the pool may have agreed to enlarge the area of the pool. Also, this claim is barred by the four year statute of limitation. Art. 5529, Vernon's Ann.Civ.St.; Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671.

The third point of error does not require discussion in view of our other rulings.

Under the fourth point it is contended that judgment should not have been rendered against the appellants J. M. McDaniel and wife, R. E. Harrison and wife, and C. A. Bacon and wife, because the instruments in question were merely executory contracts, and unenforceable because the lands described in the conveyances of these appellants were their respective homesteads.

■ In the first place, we do not agree with appellants in their view that the conveyances were merely executory contracts. The provision relative to pooling not less than 2000 acres was not a condition precedent, but was a limitation upon the grant. The language of the limitation was not that the grant should become effective upon the happening of a certain contingency, but that it should terminate unless 2000 acres were brought into the pool by a certain date. If we be mistaken in this view, appellants are met with the rule that performance by the owner may not be resisted on the ground that the land is the homestead, where the contract has been fully executed. 22 Tex.Jur. 113, 114; Carey v. Texas Pacific Coal & Oil Co., Tex.Civ.App., 237 S.W. 309, writ of error refused; Stitzle v. Evans, 74 Tex. 596, 12 S.W. 326. Here the contract was fully executed by all parties long before this suit was filed. Appellants had executed conveyances sufficient to vest title in the trustees. The pool had been completed. If it be conceded that the contract was executory from the time of its signing to the time the 2000 acres were brought into the pool, appellant made no move during that period to repudiate it. It is now too late to do so.

Finding no error, we affirm the judgment of the trial court.