**Amparo Dolores Riefkohl Craules Vda de GONZALEZ, et al., Petitioners,**

**v.**

**MISSION AMERICAN INSURANCE COMPANY, Respondent.**

No. C–9476.

Supreme Court of Texas.

Sept. 6, 1990.

Rehearing Overruled Oct. 24, 1990.

Steven A. Gibbins and Bob Gibbins, Austin, for petitioners.

**25.** *Where The Law Ends, supra,* at 216.

J. Michael Colpoys and Charles H. Smith, Dallas, for respondent.

## OPINION

MAUZY, Justice.

This case involves the interpretation of policy limits of an insurance contract. Petitioners are the relatives and beneficiaries of three passengers who died in an airplane crash. Mission American Insurance Company (Mission) had provided liability insurance to the plane's owner. Petitioners brought this suit seeking a declaratory judgment that the liability insurance policy held by the owner of the airplane sets a limit for wrongful death actions of $1,000,000 rather than $300,000 as claimed by Mission. The trial court rendered judgment for Petitioners, holding that there is a $1,000,000 coverage. The court of appeals reversed and rendered, holding that the policy provides a maximum coverage of $300,000 for bodily injury including death. We reverse the judgment of the court of appeals, and affirm the judgment of the trial court.

The dispute between the Petitioners and Mission arises over the interpretation of Endorsement No. 1 of the policy. The pertinent policy provisions are as follows:

## TRANSPORT INDEMNITY COMPANY

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:

### INSURING AGREEMENTS

\* \* \* \* \* \*

Coverage D—Single Limit Bodily Injury (including or excluding passengers) and Property Damage Liability. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, *including death* at any time resulting therefrom, sustained by any person, excluding passengers as defined herein, unless the Declarations describe Coverage D as "Including Passengers," and for damages because of injury to or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft. (Emphasis added).

\* \* \* \* \* \*

### CONDITIONS

\* \* \* \* \* \*

4. Limits of Liability. The limit of liability stated in the Declaration for Coverages C and D is the limit of the Company's liability for all damages arising out of one occurrence.

\* \* \* \* \* \*

### DECLARATION

\* \* \* \* \* \*

4. COVERAGES: The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all of the terms of this policy having reference thereto ...

| COVERAGES | LIMITS OF LIABILITY |
|---|---|
| \* \* \* | |
| D. Single Limit Bodily Injury and Property Damage Liability In-.cluding Passengers | SEE ENDORSEMENT #1 |
| | $1,000,000 each occurrence |
| \* \* \* | \* \* \* |

### ENDORSEMENT NO. 1

### LIMIT OF PASSENGER LIABILITY ENDORSEMENT

IT IS AGREED THAT WITH RESPECT TO COVERAGE D, THE COMPANY'S LIMIT OF LIABILITY FOR *BODILY INJURY* SUSTAINED BY ANY ONE PASSENGER SHALL NOT EXCEED $100,000 AND THAT AMOUNT MULTIPLIED BY THE NUMBER OF PASSENGER SEATS, AS DEFINED, FOR EACH ACCIDENT BUT IN NO EVENT MORE THAN $300,000 EACH OCCURRENCE. SAID LIMITS OF PASSEN-

GER LIABILITY ARE PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY SET FORTH FOR COVERAGE D OF ITEM 4 OF THE DECLARATIONS. (Emphasis added).

In the trial court, Mission moved for summary judgment arguing that the policy language clearly and unambiguously limits the damages of each decedent's survivors to $100,000. In its order denying Mission's motion for summary judgment, the trial court found:

> ... the Court is of the opinion that based on the policy language itself, the Defendant's Motion for Summary Judgment should be overruled.

Subsequently, Petitioners moved for summary judgment, arguing: first, that it was undisputed that Endorsement No. 1 limits only Mission's liability for bodily injury sustained by any one passenger to not exceed $100,000, and does not provide by its terms for limitations in the event of death; second, that it was undisputed that the policy was intended to provide coverage for the event of death and that the insuring agreement, specifically the paragraph entitled "Coverage D," referred to death as an insurable event expressly separate from the event of bodily injury; and third, that it is undisputed that the insuring agreement in "Coverage A" and "Coverage B" provided a litany of insured or coverable events wherein bodily injury was listed separately from the event of death. Based on these expressed terms of the insurance contract, the trial court entered summary judgment in favor of Petitioners. We affirm the trial court's judgment.

■ In reviewing a summary judgment record, this Court must determine whether a disputed material fact issue exists that would preclude a summary judgment. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867 (Tex.1984). Every reasonable inference must be indulged in favor of the nonmovants and any doubt resolved in their favor. *Id.* The question on appeal is not whether the summary judgment proof raises a fact issue with reference to essential elements of plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). In the case at bar, Petitioners' uncontroverted summary judgment proof established, as a matter of law, that Endorsement No. 1 does not refer to death.

Paragraph One of Condition 4 of the policy clearly states that Mission will pay all damages arising out of one occurrence up to $1,000,000. Then, in Endorsement No. 1, Mission limits its liability for *bodily injury* sustained by a passenger to $100,000 per seat; and since there were three passenger seats in the airplane, it limits its total liability for bodily injuries sustained by passengers to $300,000. However, nowhere in the policy or in Endorsement No. 1 does Mission ever state that its liability for all damages resulting from each passenger's *death* is limited to $100,000.

Mission argues that the term "bodily injury" in Endorsement No. 1 includes "death" and therefore, the Petitioners are only entitled to $300,000. However, the words "bodily injury" and "death" are used together throughout the policy as independent and different terms, thus it is clear that Mission did not intend one to include the other. We hold that because Endorsement No. 1 only uses the phrase "bodily injury," the Endorsement does not include "death."

■ Further, the policy contains no technical definition of the terms "bodily injury," "sickness," "disease," "death," or "including." Therefore, these words should be given their plain, ordinary and generally accepted meanings. *Western Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953). Words used in one sense in one part of a contract are, as a general rule, deemed to have been used in the same sense in another part of the instrument, where there is nothing in the context to indicate otherwise. *McDaniel v. Newton*, 187 S.W.2d 139, 142 (Tex.Civ.App.—Fort Worth 1945, writ ref'd w.o.m.); *Wood Motor Co. v. Nebel*, 232 S.W.2d 772, 776 (Tex.Civ.App.—Texarkana 1949, aff'd in part and rev'd in part, 150 Tex. 86, 238

S.W.2d 181 (1951). The language of Endorsement No. 1 that "the company's limit of liability for bodily injury sustained by any one passenger shall not exceed $100,-000," means that the insurance company's liability for any passenger's own damages resulting from the passenger's own *bodily injury* is limited to $100,000. There is no language in Endorsement No. 1 that would limit Mission's liability for all damages arising out of the death of each individual passenger to $100,000.

 If Mission intended to limit its liability for payment to $100,000 for all damages resulting from any one passenger's bodily injury, including death, then Mission had the duty to make such an intention in its policy clear and unambiguous because the terms, language, and conditions of the insurance policy were selected by Mission itself to express the terms and conditions on which the policy was issued. *See Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1978); *Glover v. National Insurance Underwriters*, 545 S.W.2d 755 (Tex.1977). Where an insurance policy's provisions are ambiguous or inconsistent, and is subject to two or more reasonable interpretations, then that construction which affords coverage will be the one adopted. *See Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977); *Adrian Assoc., General Contractors v. National Surety Corp.*, 638 S.W.2d 138 (Tex.App.—Dallas 1982, writ ref'd. n.r.e.), approved, 650 S.W.2d 67 (Tex.1982); *M.C. Industries, Inc. v. Federal Insurance Co.*, 562 S.W.2d 30 (Tex.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). Mission argues that the policy can be read to provide for a limit on coverage of $100,000 per passenger in the event of death by referring to Coverage D in conjunction with Endorsement No. 1. This interpretation requires the reader to conclude that either Endorsement No. 1 is ambiguous or that Mission's policy construction requires drafting the words "or death" after the words "bodily injury" in Endorsement No. 1. It is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who draft-

ed it since the drafter is responsible for the language used. *See Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1978).

The ambiguity in this case exists because of the way Mission chose to draft the policy. If Mission had intended to limit its liability to $100,000 per person for damages resulting from bodily injury of a passenger and damages resulting from the death of the passenger under Endorsement No. 1 Mission could have easily drafted the policy to read:

> The company's limit of liability for all damages, arising out of bodily injury, sickness or diseases, including death at anytime resulting therefrom, sustained by any one passenger shall not exceed $100,000.

Indeed, this is precisely the language Mission employed in paragraph 2 of Condition 4 of the policy.

Mission's failure to be consistent throughout the contract conveyed a specific intention in Endorsement No. 1. Mission was cognizant of the need to use both "bodily injury" and "death" to convey two meanings because it used them in tandem in other parts of the contract. By choosing to use only "bodily injury" in Endorsement No. 1, Mission elected to limit its liability solely for bodily injury to a passenger and did not limit its liability for the death of a passenger. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

GONZALEZ, J., concurs and files opinion joined by COOK, J.

HECHT, J., dissents and files opinion joined by PHILLIPS, C.J.

GONZALEZ, Justice, concurring.

This court's position is inconsistent. In citing the well-known rule of construction that inconsistent or ambiguous provisions of an insurance policy will be construed against the insurer, the court implicitly concedes that Mission's insurance policy could have been "reasonably" interpreted in two ways. Yet, both prior and subse-

quent to this statement, the court states the policy language conveyed a "specific intention" not to limit its liability to $100,000 for the death of a passenger. This is incomprehensible. Hence, I concur only in the result.

The operative language in Mission's policy is in Coverage D, which provides $1,000,000 coverage for "Single Limit Bodily Injury and Property Damage Liability [IN]cluding Passengers." The text for Coverage D, in another part of the policy (Paragraph D) provides as follows:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death....

Coverage D, however, is modified by the following endorsement:

### LIMIT OF PASSENGER LIABILITY ENDORSEMENT

IT IS AGREED THAT WITH RESPECT TO COVERAGE D, THE COMPANY'S LIMIT OF LIABILITY FOR BODILY INJURY SUSTAINED BY ANY ONE PASSENGER SHALL NOT EXCEED $100,000 ... MULTIPLIED BY THE NUMBER OF PASSENGER SEATS ... BUT IN NO EVENT MORE THAN $300,000.

The sole question before us is whether or not the term "bodily injury," as contained in Endorsement # 1, includes the "death" of a passenger.

Mission, arguing that the endorsement does include a passenger's death, reads Paragraph D as providing for three types of coverage: 1) bodily injury sustained by non-passengers; 2) destruction of property; and 3) bodily injury sustained by passengers. The endorsement limits all losses in the third category, whether the loss is a bodily injury, sickness, disease, or death.

Petitioners argue that the endorsement, by its terms, pertains solely to "bodily injury" of passengers. Any other covered loss sustained by a passenger, that is, "sickness or disease, including death," is not subject to the restrictive endorsement and is covered up to $1,000,000.

Mission responds that this reading is too cramped and technical. "Bodily injury," as used in Coverage D, obviously includes death. If "Single Limit Bodily Injury and Property Damage Liability [IN]cluding Passengers" does not include death, then there is no limit on the coverage provided by the policy. If it does include death, then, to be consistent, the term "bodily injury" as used in the endorsement should include death as well.

Petitioners respond that the text of Coverage D, as found in Paragraph D, expressly refers to "bodily injury, sickness or disease, including death." Therefore, if Mission intended to limit coverage for sickness, disease and death, it should have explicitly stated that under the "Limit of Passenger Liability Endorsement." A fair reading of this language is that "bodily injury" does not include death.

Thus, depending on what part of the policy is consulted, both parties' interpretations are plausible. Under such circumstances, I would apply the established rule of construction that where an ambiguity exists, the language of a contract should be construed most strictly against the drafting party. *See Republic Nat'l Bank v. Northwest Nat'l Bank*, 578 S.W.2d 109, 115 (Tex.1978). As Mission prepared the insurance policy and is, thus, responsible for its language, I would adopt the petitioners' interpretation. Consequently, I agree with the judgment of the court, but not its opinion.

COOK, J., joins in this opinion.

HECHT, Justice, dissenting.

As a rule, if an insurance policy is subject to more than one *reasonable* interpretation, one which affords coverage controls. *Blaylock v. American Guarantee Bank Liab. Ins. Co.*, 632 S.W.2d 719, 721 (Tex.1982); *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977). The Court invokes this rule but fails to apply it, because the interpretation the Court adopts of the policy in question is

demonstrably unreasonable. I therefore dissent.

The simple question in this case is what is the limit of liability for the death of three passengers in an airplane under the terms of the policy covering the plane. The answer requires an analysis of three policy provisions: Coverage D, the Declaration, and Endorsement No. 1. The first of these, Coverage D, is entitled "Single Limit Bodily Injury (including or excluding passengers) and Property Damage Liability." Apart from property damage, Coverage D extends by its terms to "bodily injury, sickness or disease, including death at any time resulting therefrom". The second provision, the Declaration, states the liability limits for Coverage D as follows:

| COVERAGES | LIMITS OF LIABILITY |
|---|---|
| * * * | |
| D. Single Limit Bodily Injury and Property Damage Liability Including Passengers | SEE ENDORSEMENT #1 |
| | $1,000,000 each occurrence |

Finally, the third provision involved here, Endorsement No. 1, limits liability for "bodily injury" to passengers to $100,000 apiece, not to exceed $300,000 per occurrence.

The Court fixes upon Endorsement No. 1 and concludes that because it uses the words "bodily injury" but not the word "death", its $300,000 limitation applies to bodily injury claims only and not to death claims. Noting that Coverage D extends to "bodily injury, sickness or disease, including death", the Court argues that if the limits in Endorsement No. 1 were meant to apply coextensively with that coverage, the same phrase should have been used both places. The Court rejects the idea that the phrase "bodily injury" in Endorsement No. 1 is a shorthand reference to the coverage provided by Coverage D, including death.

The first problem with the Court's persnickety view of "bodily injury" is that if that phrase is not sometimes read to include death, then there is no limitation in the policy expressly applicable to "death" claims. The only other policy limit is the $1,000,000 limit in the Declaration, which applies to "Bodily Injury". If the Court read the Declaration as strictly as it reads Endorsement No. 1, then the $1,000,000 limitation would likewise apply only to bodily injury claims, and there would be no policy limits for death claims. As attractive as it might be to have a policy without any limits whatever, that result is reaching even for the Court. Exercising restraint, the Court indulges in a little appropriate inconsistency, reading "bodily injury" very strictly in Endorsement No. 1 and more broadly in the Declaration. If the Court were as consistent as it is literal, however, it would be forced to conclude that the claims of the passengers in this case are subject either to the $300,000 limits of Endorsement No. 1 or to no limits at all.

To excuse its inconsistency, the Court explains that the Declaration refers not only to "Bodily Injury" but to Coverage D, which uses the word "death". But this leads to the second problem with the Court's view. The title of Coverage D uses the words "Bodily Injury" as a shorthand reference for what its terms describe as "bodily injury, sickness or disease, including death at any time resulting therefrom". The same shorthand reference is used in the Declaration. It seems to me that the very most the Court could say from this is that of three pertinent instances in which the phrase "bodily injury" is used, two are a shorthand reference to the longer phrase in Coverage D, and one, in Endorsement No. 1, is unclear. The Court, however, goes further, baldly insisting that "bodily injury" must be read as a shorthand reference including death in the title of Coverage D and in the Declaration, but cannot be read to include death in Endorsement No. 1.

Inconsistency is not the only fault in the Court's view; more importantly, perhaps, it leads to absurd results. If the phrase "bodily injury" in Endorsement No. 1 does not include "death", surely it does not include "sickness" or "disease" either, two other words used to describe the coverage extended under Coverage D. Thus, following the Court's reading of the policy, passenger claims for bodily injury are limited to $300,000 per occurrence, but passenger

claims for sickness, disease or death resulting from bodily injury are subject to the higher limit of $1,000,000 per occurrence. So, in the Court's view, if the three passengers in this case had been severely injured, even permanently crippled, policy coverage for their claims would be limited to $300,000. If, however, they had contracted pneumonia or some other sickness or disease while recovering from the injuries, their claims would be covered to the extent of $1,000,000. In the Court's view of this policy, it would certainly pay an injured passenger well to get a cold while suffering from his other injuries. The suggestion is, of course, facetious, but demonstrates one absurdity in the Court's interpretation of the policy.

Yet another absurdity results from the Court's view. The insurer's obligation to defend the insured against claims is contained in the following policy provision:

> With respect to such insurance as is afforded by this Policy for *bodily injury* liability and for property damage liability coverages the Company shall: (a) defend any suit against the Insured alleging *such injury, sickness, disease, or destruction* ....

Obviously, the provision does not use the word "death". Applying the Court's interpretation of "bodily injury", one must conclude that the insurer here is obliged to defend the insured against claims for bodily injury, sickness and disease, three of the four descriptions used in Coverage D, but not against claims for death, the other description in that coverage. The Court offers no explanation for this rather peculiar result of the application of its interpretation to other provisions of the policy.

An interpretation of an insurance policy that is inconsistent and leads to absurd results is not, in my view, a reasonable one. The phrase "bodily injury" used in Endorsement No. 1, Mission suggests, has the same meaning that it has in the title of Coverage D and in the Declaration, that it serves occasionally as a shorthand reference to the phrase, "bodily injury, sickness or disease, including death", used in the body of Coverage D. Under this interpre-

tation, coverage of passenger claims for bodily injury, sickness, disease and death would be limited to $300,000 per occurrence. The total coverage for those claims, other such claims by non-passengers, and property damage claims would be limited to $1,000,000. And the insurer would be obliged to defend the insured against all such claims. This interpretation is far from certain, as I readily admit; the language of the policy is not as clear as it might be. There is room for doubt. However, the interpretation the insurer suggests is consistent and sensible, attributes missing in the Court's interpretation, and it would be entirely reasonable except for one major fault: it restricts the plaintiffs' recovery in this case.

Because I believe that the Court's interpretation of the policy language in this case is plainly unreasonable, I would accept the only reasonable interpretation that has been suggested and affirm the judgment of the court of appeals.

I therefore dissent.

PHILLIPS, C.J., joins in this dissenting opinion.