In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00011-CR


______________________________




LAVONDE JAMAL TERRELL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 232nd Judicial District Court


Harris County, Texas


Trial Court No. 854101




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 In two points of error, Lavonde Terrell appeals his jury conviction for the offense of
sexual assault. Terrell was indicted for burglary of a habitation with intent to commit sexual
assault, but the jury convicted him of the lesser offense of sexual assault. The court then
followed an agreed recommendation as to punishment and sentenced Terrell to ten years'
imprisonment. 

 Terrell contends the evidence was factually insufficient to support his conviction for
burglary of a habitation with intent to commit sexual assault. He also contends the trial
court erred by refusing his requested instruction to the jury on the lesser offense of criminal
trespass. 

 The victim, who was Terrell's seventeen-year-old former girlfriend, testified that on
March 2, 2000, around 9:30 p.m., she went to her bedroom to take a bath and
unexpectedly found Terrell in her bedroom. He had entered through a bedroom window. 
When she entered the room, Terrell grabbed her, closed the door, locked it, and began to
strike her in the face with his fist. Terrell threatened her and forced her to take a bath while
he watched. He then started striking her again and choked her until she lost
consciousness. When she regained consciousness, she noticed her shorts were twisted. 
The victim testified that when Terrell dozed off, she ran from the room and got her mother. 
The victim and her mother then saw Terrell exit the bedroom through a window.


 Terrell's testimony presented a different version of the events. He testified he was
invited to the victim's room that evening and was there with her consent. He admits
striking, choking, and kicking the victim, but testified they then "made up" and had
consensual sex. 

 Terrell first complains the evidence was factually insufficient to support his
conviction for burglary of a habitation with intent to commit sexual assault. However,
Terrell was acquitted of this offense and found guilty of the lesser offense of sexual
assault. We therefore overrule Terrell's first point of error as moot.

 In his second complaint, Terrell contends the trial court committed reversible error
because it denied his request to include the lesser offense of criminal trespass in the jury
charge. A defendant is entitled to a charge on a lesser offense if (1) the lesser offense is
included within the proof necessary to establish the offense charged, and (2) there is some
evidence that would permit the jury rationally to find that if the defendant is guilty, the
defendant is guilty only of the lesser offense. Wesbrook v. State, 29 S.W.3d 103, 113
(Tex. Crim. App. 2000), cert. denied, ___ U.S. ___, 121 S.Ct. 1407, 149 L.Ed.2d 349
(2001); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); Dowden v.
State, 758 S.W.2d 264, 268 (Tex. Crim. App. 1988); Royster v. State, 622 S.W.2d 442,
446 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh'g).

 If a defendant presents evidence that no offense was committed, or presents no
evidence, and there is no evidence otherwise showing the defendant is guilty only of a
lesser included offense, then a charge on a lesser offense is not required. Aguilar v. State,
682 S.W.2d 556, 558 (Tex. Crim. App. 1985) (quoted in Bignall v. State, 887 S.W.2d 21,
22-24 (Tex. Crim. App. 1994)).

 Further, the evidence must establish the lesser included offense as a valid rational
alternative to the charged offense. Wesbrook, 29 S.W.3d at 113; Arevalo v. State, 943
S.W.2d 887, 889 (Tex. Crim. App. 1997). This means the evidence must allow a jury to
rationally conclude the appellant was guilty only of the lesser offense. Wesbrook, 29
S.W.3d at 113-14. 

 The Texas Penal Code defines criminal trespass as:

 (a) A person commits an offense if he enters or remains on
property, . . . of another without effective consent or he enters or remains in
a building of another without effective consent and he:


 (1) had notice that the entry was forbidden; or


 (2) received notice to depart but failed to do so.


Tex. Pen. Code Ann. § 30.05(a) (Vernon Supp. 2002). 

 Terrell satisfies the first prong of the test. Criminal trespass is within the proof
necessary to prove burglary. Aguilar, 682 S.W.2d at 558. Having met the first hurdle,
Terrell must still satisfy the second prong. Under the second prong, there must be some
evidence that would permit the jury rationally to find that if Terrell is guilty, he is guilty only
of the lesser offense. Wesbrook, 29 S.W.3d at 113. 

 Terrell was charged with burglary of a habitation with intent to commit sexual
assault. Although the victim's testimony proves the elements of criminal trespass, her
testimony further establishes Terrell could not be guilty of only criminal trespass. 
According to her testimony, Terrell was present in her bedroom without her consent, and
while there he physically and sexually assaulted her. 

 If Terrell's testimony was believed by the jury, he could not be guilty of the lesser
offense of criminal trespass because he was in the house with the victim's consent. Terrell
testified he was invited to the house, the victim let him into the house, and she never asked
him to leave. His testimony was a complete denial of a trespass. If believed by the jury,
it would have constituted a complete defense to the offense charged, as well as the lesser
offenses of sexual assault and criminal trespass. Thus, Terrell was not entitled to the
requested charge on criminal trespass. This contention of error is overruled.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: December 27, 2001

Date Decided: December 28, 2001


Do Not Publish




.gif" alt="Footnote" width="16" height="14" border="0">

 
Farmers now appeals, questioning the legal and factual sufficiency of the trial court's determination
that Neal's two race cars were covered under his homeowners insurance policy. 
Standard of Review
            When reviewing a trial court's findings for legal and factual sufficiency, appellate courts
should apply the same standards that would be used in reviewing evidence supporting a jury's
findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). Recognizing that "findings of fact
issued in a bench trial have the same force and dignity as a jury's verdict," we note that the trial
court's findings "are not conclusive when there is a complete statement of facts in the record." 
Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex. App.‒San Antonio 1995, writ denied). In such a
situation, appellate courts are not bound by the trial court's findings, id., but may overturn them only
if, after weighing all the evidence in the record, they "are so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust." Ortiz v. Jones, 917 S.W.2d 770,
772 (Tex. 1996).
            A trial court's conclusions of law are always reviewable. Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.‒Austin 1992, no writ). They "will be upheld
on appeal if the judgment can be sustained on any legal theory supported by the evidence" and,
unless erroneous as a matter of law, will not be reversed. Id. In conducting a de novo review,
appellate courts may reexamine for correctness legal conclusions drawn from specific findings of
fact contained in the record, id. at 196 & n.1, and exercise their own judgment on each issue,
affording no deference to the original tribunal's decision. Quick v. City of Austin, 7 S.W.3d 109, 116
(Tex. 1999).
Recreational Purposes?
            To determine this coverage question, we must carefully examine the policy language
underlying the dispute. Insurance policies are contracts subject "to the same rules of construction
as other contracts," and "[o]ur primary goal, therefore, is to give effect to the written expression of
the parties' intent." Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 738, 740 (Tex. 1998). In
interpreting an insurance policy, it will be "construed liberally in favor of the insured and strictly
against the insurer, especially when . . . dealing with exceptions and limitations." Cont'l Cas. Co.
v. Fina Oil & Chem. Co., No. 01-02-00449-CV, 2003 Tex. App. LEXIS 5353 (Tex. App.‒Houston
[1st Dist.] June 26, 2003, no pet.) (citing Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734, 737
(Tex. 1990)).
            Although Neal and Farmers agree that the contract language is unambiguous, each party
urges this Court to adopt a different interpretation. The policy itself expressly excludes from
coverage any "motor or engine propelled vehicles or machines designed for movement on land,
including attached machinery or equipment." As a limited exception to this provision, the policy
also provides coverage for certain vehicles that (1) "are not subject to motor vehicle registration" and
(2) are "vehicles or machines used for recreational purposes while located on the residence
premises." (Emphasis omitted.) Because there is no disagreement that Neal's race cars were not
subject to motor vehicle registration, the difference in the parties' interpretations results from the
wording of the exception's second element. Neal contends the policy covers vehicles used for
recreational purposes as long as they are on the premises at the time of the loss, while Farmers
contends the policy covers vehicles used for recreational purposes so long as such recreational use
occurs on the residence premises. After briefing the location issue in that fashion, Farmers conceded
at oral argument that otherwise covered vehicles do not become uncovered because their recreational
use occurs off premises. We agree, and now focus on the recreational component of the coverage
issue.
            That parties may advance conflicting interpretations of a contract does not necessarily mean
the contract is, in fact, ambiguous. Columbia Gas Transmission Corp. v. New Ulm Gas, 940 S.W.2d
587, 589 (Tex. 1996). The contract must be examined as a whole in order to ascertain whether there
is only one reasonable interpretation, permitting a court to provide "a definite or certain meaning as
a matter of law." Id. The pertinent contract language at issue states: "[W]e do cover . . . vehicles
. . . used for recreational purposes . . . ." (Emphasis omitted.) We now examine this statement in
light of the contract as a whole and determine whether the exception is broad enough to include
Neal's race cars.
            Farmers maintains that Neal's race cars were excluded from coverage because they were not
"vehicles used for recreational purposes" in the context of the exception to the policy's general
exclusion of motor vehicles. Recreation is generally defined as "refreshment by means of some
pastime, agreeable exercise, or the like," or as "a pastime, diversion, exercise, or other resource
affording relaxation and enjoyment." The Random House Dictionary of the English
Language 1613 (2d ed. 1987). Neal's position is that because he drove and worked on his race cars
for fun, or as a diversion or hobby, his activities with respect to the cars conform to this general
definition. In other words, because Neal's race cars were used as a means of refreshment or
diversion, it is the equivalent of saying they were used for recreational purposes. 
            Attempting to strengthen this argument, Neal cites City of Bellmead v. Torres, in which the
Texas Supreme Court noted that the Legislature's definition of "recreational purposes" included
"activities such as hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure
driving, nature study, water skiing and water sports." City of Bellmead v. Torres, 89 S.W.3d 611,
613 (Tex. 2002) (emphasis added). We find wholly unpersuasive Neal's comparison of the
Legislature's use of "pleasure driving" to the only activities for which Neal's race cars are suited. It
is highly unlikely that the Legislature, when using the term "pleasure driving," envisioned individuals
"screaming" down a straight, quarter-mile stretch of pavement. It seems incongruous to think of
these vehicles as being driven for pleasure. One of Neal's race cars, for example, has a 230-inch
wheelbase; can only burn methanol or high-octane automotive fuel; has only two speeds: idle or
"wide open" (i.e., the car either idles or travels at speeds approaching 165 miles per hour); has an
extremely limited turning radius, as it is designed to travel in a straight line; requires coolant and fuel
to be replenished after every quarter mile; and must be stopped by parachute. Neal's own testimony
reveals that, if the car was driven even for a mile or two, its transmission would "blow up." 
            While not in itself dispositive, it is instructive to note other types of motor- or engine-propelled vehicles that are specifically excepted from the policy's general exclusion in order to
determine whether the race cars described above could possibly have been contemplated by the
parties. Excepted, for example, are devices for assisting the handicapped, power mowers, golf carts,
and farm equipment. It is highly unlikely that Neal's race cars would normally be included in the
same category as these less mechanically sophisticated (and much less expensive and dangerous)
vehicles; however, the additional phrase characterizing excepted vehicles as those "used for
recreational purposes" still suggests the possibility of coverage.
            One difficulty with Neal's application of the general definition of recreation to the facts in
this case is that it invites use of a substantially subjective test. We recognize that, although there are
many categories of activities generally recognized as recreational, to adopt a definition of recreation
that includes any activity one enjoys would undermine any purposeful exclusion of property as
inevitably must be considered in the context of homeowners insurance coverage. To some, even an
activity as mundane as gardening may be considered recreational; to others, gardening may be
viewed as an interminably tiresome chore. Similarly, while Neal undoubtedly enjoyed working on,
maintaining, and racing his cars, it is just as likely that others would consider such activities
unpleasant, tedious, and hazardous‒not recreational. 
            If we were to adopt a definition as global as Neal suggests, it would be particularly significant
that even Neal's characterizations of his race cars were not altogether consistent. The record
indicates that, during the four tax years from 1992 through 1995, Neal himself categorized his race
cars as being used for business purposes and, while depreciating their value in each of the four tax
years, conspicuously failed to include them in Part V of IRS Form 4562, which asks taxpayers to list,
among other things, automobiles, other vehicles, and property used for entertainment, recreation, or
amusement. This, however, is only some evidence against Neal's position that he used his race cars
for recreational purposes. 
            Although reasonable minds may differ in their view of what constitutes a recreational activity
or, more specifically, what is encompassed in the phrase "vehicles used for recreational purposes,"
it is Farmers' unfortunate position to have state-approved or state-promulgated forms


 to use in its
homeowners policies that employ that rather elastic language. Not only are exceptions and
limitations to coverage generally construed strictly against the insurer and in favor of the insured,
Hallman v. Allstate Ins. Co., No. 05-02-00962-CV, 2003 Tex. App. LEXIS 6531, at *5 (Tex.
App.‒Dallas July 30, 2003, no pet.), but courts must also "adopt the construction of an exclusionary
clause urged by the insured as long as that construction is not unreasonable, even if the construction
urged by the insurer appears to be more reasonable or a more accurate reflection of the parties'
intent." Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991). 
Although we are not bound by the trial court's findings, we may overturn them only if, after weighing
all the evidence in the record, we determine they are "so against the great weight and preponderance
of the evidence as to be clearly wrong and unjust." Ortiz, 917 S.W.2d at 772.
            Neal testified he and his son took the dragster to the races during the warmer months of the
year as a "recreational activity," before preparing for hunting season. Neal also testified that, during
the cooler months, he and his son would work on their cars as a father and son activity and would
"play with them, monkey with them, tinker with them . . . for enjoyment," "for fun," and "for
recreational purposes." Neal's wife agreed with the "recreational purposes" categorization of the
activity. Neal testified that, in season, the family would take the dragster to races approximately
once a month, depending on the family budget; that, although he did win money on occasion, he
never won enough in any race to pay the expenses he and his family incurred in getting to and
participating in it, and that he justified the loss of money because he considered it "recreational
activity." Neal described two categories of participants on the racing scene, "Sportsman," into which
he and other hobbyists and part-timers fell, and "Professional," consisting of those who raced as a
business. He noted that, in contrast to Neal's racing practices, the business racers treat racing like
a job, working on it "every day of the week" and going to all the races they can find. 
            We are called on to determine whether, considering the evidence as a whole, the trial court's
finding of recreational use was against the great weight and preponderance of the evidence. We
conclude the evidence was sufficient to support the trial court's finding that Neal's race cars were
used for "recreational purposes," within the common meaning of that phrase, that is, for "refreshment
by means of some pastime," or as "a pastime, diversion, exercise, or other resource affording
relaxation and enjoyment." Random House Dictionary, pg. 1613. 
Intentional Misrepresentation?
            Farmers also contends that Neal's policy was void because Neal intentionally concealed or
misrepresented material facts or circumstances. Specifically, Farmers contends Neal intentionally
concealed the existence of the race cars because he did not own them at the time he purchased his
insurance policy and failed to affirmatively disclose to Farmers that he subsequently purchased the
cars and was storing them on the residence premises. The record itself contains no evidence Neal
intended to conceal or misrepresent material facts in an effort to defraud Farmers. On the contrary,
the record reflects that, on at least two occasions, Neal contacted Farmers with information he
thought relevant to the policy in question, thinking that adjustments to the policy might be necessary. 
Farmers was certainly entitled to be informed of the existence of this highly unusual property, but
we find there was sufficient evidence to support the trial court's conclusion that Neal's failure to
report the purchase did not amount to intentional concealment, misrepresentation, or fraud.
 
            We, therefore, affirm the judgment of the trial court.
 
                                                                        Josh R. Morriss, III
                                                                        Chief Justice

Date Submitted:          October 15, 2003
Date Decided:             October 29, 2003