United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 6, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-41432

_____

V. L. PROPERTIES, INC.,

                                        Plaintiff-Appellant,

                        versus

ALLEGHANY UNDERWRITING RISK SERVICES LTD./
LLOYD'S OF LONDON,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. G-03-CV-445

_____

Before REAVLEY, BENAVIDES and PRADO, Circuit Judges.

PER CURIAM:[*]

This diversity suit under Texas law concerns which deductible is applicable to an insurance claim. Lloyd's issued the policy to V.L. Properties. Summary judgment was rendered for Lloyd's. We reverse.

The insured owns a yacht basin on the Gulf Coast. In 2001 strong winds caused property damage to the facility estimated at $64,410.22. While the parties agree that the damage giving rise

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to the insurance claim was caused by wind, the record is limited regarding the weather conditions accompanying the winds or the extent or magnitude of the winds.  The original petition contains a paragraph, admitted in Lloyd's answer, stating only that there were no witnesses to the "bad weather," that according to a newspaper, "a spokesperson for the U.S. Weather Service said that the wreckage could have been caused by a tornado or straight-line winds," that there was no damage to neighboring properties, and that the damage to the yacht basin "was restricted to a small portion of the overall property."

The policy consists of a Certificate of Insurance comprising the first three pages, followed by a printed set of Marina Property Insurance Clauses.  The Clauses begin with a set of Definitions.  The certificate provides only for insurance of "Piers & Floating Docks Etc" under "Section 3."  There are no sections 1 or 2.

The dispute concerns the amount of the deductible.  Section 3 of the Certificate includes the following language:

> Deductible each accident
>
> 1.   In respect of Catastrophe
>      which will include wind, wave
>      action, earthquake and flood     USD 50,000
>
> 2.   Any other loss                   USD  5,000

Although the term "Catastrophe" is capitalized, it is not defined in the definitions section or elsewhere.

2

In granting summary judgment, the district court held as a matter of law that the $50,000 deductible applied because the damage was caused by wind. The court accepted Lloyds's position that the policy unambiguously provides that any damage to the insured property caused by wind was a "catastrophe" under the policy and subject to the higher deductible.

Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to contracts generally. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). If an insurance policy is expressed in unambiguous language, its terms will be given their plain meaning and it will be enforced as written. Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984). If, however, a contract is susceptible to more than one reasonable interpretation, a court will resolve any ambiguity in favor of coverage. Id. "[W]hen the language chosen is susceptible of more than one construction, such policies should be construed strictly against the insurer and liberally in favor of the insured." Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987). Whether the contract is ambiguous is a question of law for the court to decide. Nat'l Union, 907 S.W.2d at 520.

The mere fact that the parties disagree as to coverage does not create an ambiguity, Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994). Extrinsic evidence cannot be

3

admitted for the purpose of creating an ambiguity.  <u>Nat'l Union</u>, 907 S.W.2d at 520. If the provisions of the insurance contract can be given a "definite or certain legal meaning," then the insurance policy is not ambiguous.  <u>Id.</u>

We think it is unreasonable to construe the language to make any wind damage a catastrophe.  The terms used in the policy should be given their plain, ordinary meaning unless the policy itself shows that the parties intended terms to have a different, technical meaning.  <u>Gonzalez v. Mission Am. Ins. Co.</u>, 795 S.W.2d 734, 736 (Tex. 1990).  The word "catastrophe" has a plain and ordinary meaning:  a momentous tragic event or an utter failure. <u>See</u> MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 179 (10th ed. 2002).  It is not given a contrary meaning in the definitions section of the policy.  Further, if Lloyds as the drafter intended the higher deductible to apply to any event resulting in damages caused by wind, and not otherwise excluded from coverage, it could have used the term "any Insured Event caused by" instead of "Catastrophe which will include."  Insured Event is a term included in the definitions section, and means "[a]n event which causes loss or damage which is recoverable under this insurance." Or Lloyds could have substituted "loss" for catastrophe, which in context would more clearly indicate that losses caused by wind and the other stated causes are subject to the higher deductible of subpart 1 of the deductible provision, regardless of the

4

amount of loss, while "[a]ny other loss" is subject to the lower deductible of subpart 2.

We will not decide on this summary judgment record whether this particular event could be held to be a catastrophe to the insured's facility, and we leave that to further development in the district court.

REVERSED and REMANDED.

BENAVIDES, Circuit Judge, dissenting:

I respectfully dissent from the majority's decision which concludes that it is unreasonable to construe the policy language to make any wind damage a catastrophe. In my view, the policy unambiguously provides that any damage to the insured property caused by wind is a "catastrophe" under the policy and, therefore, subject to the higher deductible.

The policy explicitly states that the higher deductible will apply to "Accidents . . . In respect of Catastrophe, which will include wind, wave action, earthquake and flood." Because a plain reading of the contract demonstrates that the definition of catastrophe specifically includes loss caused by wind, there can be no ambiguity as to whether the higher deductible applies to damage caused by wind; the parties clearly contemplated that where damage to the insured property is caused by wind, the higher deductible applies. Where, as here, the policy terms are unambiguous, the language of the policy alone expresses the parties' intent, and the contract must be enforced as written. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). Therefore, because the catastrophe deductible provision unambiguously applies to damage caused by wind, and the parties do not dispute that the damage to the yacht basin facility was caused by wind, the higher deductible applies.

The majority notes that the word "catastrophe" has a plain

6

and ordinary meaning and that a contrary meaning is not given in the definitions section of the policy. While the plain meaning of "catastrophe" does take the magnitude of an event or the quantum of damages caused by an event into account, in my view the policy clearly gives "catastrophe" a different, and more general, definition. Under Texas state law, where an insurance policy clearly gives a word a different meaning than its ordinary meaning, the meaning contemplated by the policy governs and the ordinary meaning of that word does not apply. *See Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979). Therefore, the ordinary meaning of the word "catastrophe" should be irrelevant to our analysis because the parties clearly contemplated that, for purposes of the policy, the higher deductible would apply to damage caused by wind, wave, earthquake, and flood – irrespective of the amount or extent of the damage caused by such loss.

Moreover, the parties to the policy did not include any express words of limitation limiting the applicability of the higher deductible to only certain types of wind damage. Because the parties can choose the language used in the contract, and the parties here did not include express words of limitation in the policy, we are powerless to alter the parties' original intent, as manifested in the clear and explicit language of the contract. *Std. Constructors, Inc. v. Chevron Chem. Co., Inc.*, 101 S.W.3d

7

619, 625 (Tex. App. - Houston 2003); *see also Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995) (concluding that where express words of limitation do not appear on the face of an insurance policy, there is no ambiguity and the contract will be enforced as written).

In my view, the policy language dictates that all loss caused by, *inter alia*, wind damage amounts to a "catastrophe," subject to the higher deductible. Accordingly, I would affirm the judgment of the district court, which held as a matter of law that the higher deductible applied because the damage was caused by wind.