Jeane LAURENCE, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 03–97–00448–CV.

Court of Appeals of Texas, Austin.

Jan. 14, 1999.

Rey Perez, Tinsman & Houser, Inc., San Antonio, for Appellant.

Alex M. Miller, Allen, Stein, Powers, Durbin & Hunnicutt, P.C., San Antonio, for Appellee.

Before Justices JONES, KIDD and POWERS.*

MACK KIDD, Justice.

This appeal concerns the validity of a provision in an automobile insurance policy reducing the amount of benefits paid under the policy's uninsured motorist (UM) coverage by an amount paid to the insured under the policy's personal injury protection (PIP) coverage. Appellant Jeane Laurence and appellee State Farm Mutual Automobile Insurance Company each moved for summary judgment concerning the validity of the provision. After determining that the PIP offset provision in Laurence's policy was valid and enforceable, the trial court granted State Farm's motion for summary judgment effectively reducing Laurence's UM benefits by the amount received under her PIP coverage. Laurence appeals. We will affirm.

## BACKGROUND

The facts of this case have been stipulated and are undisputed.

While riding as a passenger in a rental car, Laurence was involved in a hit-and-run accident that caused her actual damages of $14,-325.23. These damages consisted of past and future loss of wage-earning capacity, past and future physical pain and suffering, past and future mental anguish, past and future physical impairment, pre-judgment interest, attorneys' fees, and other damages that are or could be claimed in Laurence's original petition.

When the accident occurred, Laurence was covered by an automobile insurance policy issued by State Farm. Relevant to this appeal, the policy provided Laurence UM coverage up to $50,000 per person and $100,000 per accident as well as PIP coverage up to $5,000. The hit-and-run vehicle that caused the accident qualified as an "uninsured motor vehicle" under the policy.

After the accident, Laurence applied for and received $4,325.23 in PIP benefits. These benefits covered Laurence's reason-

---

\* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment.

*See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

able and necessary medical expenses and eighty percent of her lost wages. After receiving these PIP benefits, Laurence filed a claim for full benefits under her UM coverage. As discussed below, the amount of benefits owed to Laurence under her UM coverage forms the basis of the controversy between the parties.

### THE CONTROVERSY

Laurence and State Farm stipulated that Laurence was legally entitled to recover $14,325.23 from the owner or operator of the uninsured motor vehicle. Therefore, Laurence and State Farm agree that the total damages incurred by Laurence were $14,325.23. State Farm, however, moved for summary judgment maintaining that pursuant to the insurance policy in question, it was authorized to subtract from the amount of Laurence's actual damages the $4,325.23 in PIP benefits already paid to Laurence under her PIP coverage. In support of its position, State Farm directed the trial court to the following provision in the policy:

> In order to avoid insurance benefits payments in excess of actual damages sustained, subject only to the limits set out in the Declarations and other applicable provisions of this coverage, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage.

In response to State Farm's motion for summary judgment, Laurence filed her own motion for summary judgment claiming that the provision relied upon by State Farm was invalid and thus unenforceable. Laurence argued that State Farm's attempt to offset her UM coverage by the amount paid to her under her PIP coverage was not allowed by statute or Texas Supreme Court authority. Laurence therefore claimed that State Farm owed her actual damages of $14,325.23, in addition to the $4,325.23 she had already received under her PIP coverage.

After considering the argument of each party, the trial court granted State Farm's motion for summary judgment determining that the PIP offset provision was valid and enforceable.

### DISCUSSION

The question presented in this case concerns the validity of the clause contained in Laurence's automobile policy allowing State Farm to offset or deduct benefits paid under Laurence's PIP coverage from Laurence's UM coverage.

In her sole point of error, Laurence argues that the trial court erred in granting State Farm's motion for summary judgment and denying her own motion for summary judgment because the trial court erroneously determined that the provision offsetting PIP benefits against her UM coverage was valid. Because the parties stipulated in the trial court to the relevant facts, we review the cross-motions for summary judgment by determining all legal questions presented. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex.1993). Each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Id.;* Tex.R. Civ. P. 166a(c).

In order to understand the issue presented in this case, we begin with a history and overview of the statutes mandating that an insurer provide both UM coverage and PIP coverage to an insured.

#### Uninsured Motorist Statute

The concept of providing relief in the form of uninsured motorist insurance coverage for persons injured in collision with cars driven by negligent uninsured motorists was initially introduced in Texas in 1955. *See* Howard Nations, *Statutory Damages Recovery: Uninsured Motorist Statute*, 18 S. Tex. L.J. 329 (1977). The insurance industry offered first-party coverage, on a voluntary basis, which allowed an insured to proceed against her own insurance company for recovery of bodily injury damages which the insured sustained as a result of the negligence of an uninsured motorist. *Id.* In 1967, the legislature removed the insurers' option to voluntarily provide UM coverage and mandated that such coverage be provided with the enactment of the Texas Uninsured Motorist Statute. *See* Act of May 3, 1967, 60th Leg., R.S., ch. 202, § 1, 1967 Tex. Gen. Laws 448

(Tex. Ins.Code Ann. art. 5.06–1, since amended).[1]

In pertinent part, the current statute provides:

No automobile liability insurance ... shall be delivered ... unless coverage is provided ... in at least the limits described in the Texas Motor Vehicle Safety–Responsibility Act, ... *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured* motor vehicles because of bodily injury, sickness, or disease, including death, or property damage resulting therefrom.

Tex. Ins.Code Ann. art. 5.06–1 (West 1981) (emphasis added) ("Code"). It is clear from the express terms of the statute that the purpose and policy of UM coverage is to protect insured victims from the negligence of financially irresponsible motorists. *See American Liberty Ins. Co. v. Ranzau,* 481 S.W.2d 793, 797 (Tex.1972); *Fidelity & Casualty Co. of New York v. Gatlin,* 470 S.W.2d 924, 927 (Tex.Civ.App.—Dallas 1971, no writ) (law was enacted to benefit the innocent victim of a financially irresponsible motorist). The statute accomplishes this purpose by placing the insurer in the shoes of the financially irresponsible tortfeasor as a source of payment to the innocent victim. In addition, when it enacted the statute requiring UM coverage, the legislature declared that the purpose of the statute was to protect motorists against financial loss caused by negligent, financially irresponsible motorists. Act of May 3, 1967, 60th Leg., R.S., ch. 202, § 3, 1967 Tex. Gen. Laws 448, 449.

### *Personal Injury Protection Statute*

In 1973, the Legislature enacted a statute mandating that insurers provide personal injury protection or PIP coverage as it is commonly called. Act of April 10, 1973, 63d Leg., R.S., ch. 52, § 1, 1973 Tex. Gen. Laws 90 (Tex. Ins.Code Ann. art. 5.06–3, since amended). Article 5.06–3 provides in pertinent part:

No automobile liability insurance policy ... shall be delivered ... unless personal injury protection coverage is provided therein or supplemental thereto.

Code art. 5.06–3(a) (West 1981).

PIP coverage is a form of "no fault" insurance, which means that regardless of fault, an insurer is required to provide PIP protection to the insured, members of the insured's family, occupants of the insured's vehicle, and insured pedestrians in accidents arising out of the use and operation of a motor vehicle. *See* Nations, 18 S. Tex. L.J. at 289. As expressed in article 5.06–3(b), PIP coverage is provided to the insured as a quick source of funds for an accident victim for immediate medical expenses and wage losses that are likely to result from an accidental injury involving an automobile. *Id.* at 290.[2]

A unique feature of the Texas PIP statute is its retention of the collateral source rule

---

1. The statute has been amended three times since its enactment. However, the substantive changes to the Act dealt with the inclusion of underinsured motorist coverage in addition to uninsured motorist coverage and do not affect the issues presented by this appeal.

2. Article 5.06–3(b) provides:
   "Personal injury protection" consists of provisions of a motor vehicle liability policy which provide for payment to the named insured in the motor vehicle liability policy and members of the insured's household, any authorized operator or passenger of the named insured's motor vehicle including a guest occupant, up to an amount of $2,500 for each such person for payment of all reasonable expenses arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, and in the case of an income producer, payment of benefits for loss of income as the result of the accident; and where the person injured in the accident was not an income or wage producer at the time of the accident, payments of benefits must be made in reimbursement of necessary and reasonable expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the family or family household. The insurer providing loss of income benefits may require, as a condition of receiving such benefits, that the insured person furnish the insurer reasonable medical proof of his injury causing loss of income. [Unless otherwise agreed] the personal injury protection in this paragraph specified shall not exceed $2,500 for all benefits, in the aggregate, for each person.
   Tex. Ins.Code Ann. art. 5.06–3(b).

with regard to other medical and wage continuation benefits that the recipient might be entitled to receive. *See* Nations, 18 S. Tex. L.J. at 291. This feature is expressly found in article 5.06–3(c) which provides:

> The benefits required by this Act shall be payable without regard to the fault or nonfault of the named insured or the recipient in causing or contributing to the accident, and without regard to any collateral source of medical, hospital, or wage continuation benefits. An insurer paying benefits pursuant to this Act shall have no right of subrogation and no claim against any other person or insurer to recover any such benefits by reason of the alleged fault of such other person in causing or contributing to the accident.

Code art. 5.06–3(c) (West 1981). Thus, under this provision, the insurer has no right to offset other benefits the injured party might receive against PIP benefits. Moreover, as seen in the last sentence of article 5.06–3(c), the insurer has no right of subrogation out of a recovery by the insured or other covered party in a tort action brought against the negligent uninsured motorist.

With these statutes in mind, we turn to the issue presented.

### Issue Presented

We consider in this case whether the Insurance Code and public policy permit State Farm to contract with Laurence to reduce the amount of UM benefits due her by the amount of PIP benefits paid when the damages Laurence incurred were less than the combined limits of both coverages. The provisions of the Insurance Code denying both offset and subrogation to an insurer who pays PIP benefits suggest that an insured who receives these benefits might be doubly compensated for her injuries.

In contrast to the scheme of PIP benefits, an insurer paying UM benefits has a right of subrogation from the proceeds of any settlement or judgment resulting from the payee's exercising a right of recovery against anyone legally responsible for her injury. Code art. 5.06–1(6) (West Supp.1998). A right of subrogation evinces a policy that an injured person be made whole, but not better than whole. *See Ortiz v. Great S. Fire & Casual-*

*ty Ins. Co.,* 597 S.W.2d 342, 343 (Tex.1980); *Esparza v. Scott & White Health Plan,* 909 S.W.2d 548, 552 (Tex.App.—Austin 1995, writ denied). In addition, when an uninsured motorist causes only property damage, an insured can recover under both her collision coverage and her UM coverage, provided that "[i]n no event shall the insured recover under both coverages more than the actual damages suffered." Code art. 5.06–1(4)(b) (West 1981). Thus, the PIP statute permitting double recovery in some cases and the UM statute, apparently precluding it, are at odds with each other. Because the statutes themselves do not definitively resolve the issue before us, we turn to the cases construing them for guidance, keeping in mind the legislature's intent to protect those harmed by uninsured motorists from financial loss.

After the legislature enacted the requirement of UM coverage, insurers began to insert into automobile policies clauses that purported to offset certain payments against UM benefits. This is exemplified in the present cause whereby State Farm has inserted into Laurence's policy a provision offsetting from "covered damages" various collateral sources including other insurance, workers' compensation, disability benefits, auto medical expense benefits, and PIP benefits. Such offset clauses have generated substantial litigation.

In *Ranzau,* for instance, the insured was riding in another's car when she was injured by an uninsured motorist. Ranzau's damages exceeded the UM limits of both her policy and the car owner's policy. The car owner's insurer paid Ranzau the policy limits, but her own insurer refused to pay her, invoking a clause offsetting other insurance payments against UM benefits. 481 S.W.2d at 795. The supreme court held that Ranzau was entitled to recover the full limits of each policy to compensate her actual damages. *Id.* at 797. The court invalidated the "other insurance" clause insofar as it limited Ranzau's recovery to the statutory minimum for one policy when she was eligible to recover for her damages from an additional source. The court directed its concern toward making effective for each policy the minimum coverage required by the UM statute when

the insured's damages exceed the combined minimum coverages. *Id.* Thus, when more than one insurer has provided coverage to an insured, the minimum coverage required for each policy cannot be reduced so as to limit the insured's recovery of actual damages.

In *Gatlin*, the court of appeals considered a similar clause and held that the UM statute sets a minimum amount of coverage, but does not limit the total amount of recovery so long as that amount does not exceed the amount of actual loss. 470 S.W.2d at 928. The insured in *Gatlin*, whose loss exhausted the limits of one policy, could thus proceed under another available policy. The court declined to imply that an insured could recover from separate policies more than the actual loss and specifically reserved making such a ruling. *Id. See also Travelers Indem. Co. v. Lucas*, 678 S.W.2d 732, 735 (Tex. App.—Texarkana 1984, no writ) (insured could recover UM·limits from each of two policies to extent recovery did not exceed actual damages); *Northwestern Mut. Ins. Co. v. Lawson*, 476 S.W.2d 931, 935 (Tex.Civ. App.—Tyler 1972, no writ) (insured could be reimbursed from two policies, provided that in no case could he recover more than his actual loss).

Texas courts have also invalidated clauses offsetting workers' compensation payments against UM benefits. *E.g., Hamaker v. American States Ins. Co.*, 493 S.W.2d 893, 898 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Fidelity & Casualty Co. v. McMahon*, 487 S.W.2d 371, 372 (Tex.Civ. App.—Beaumont 1972, writ ref'd n.r.e.). And clauses offsetting medical payments coverage have likewise been invalidated. *E.g., Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679, 685–86 (Tex.1974). In *Westchester*, the insured incurred actual damages well above the combined limits of her medical payment and UM coverages. 512 S.W.2d at 680. Although the insured's actual loss in *Hamaker* had not been judicially determined before the appeal was taken, the court quoted approvingly from an opinion invalidating an offset clause when no question of double recovery was presented. 493 S.W.2d at 897 (citing *Williams v. Buckelew*, 246 So.2d 58, 68 (La.App.1970)). Among those cited, the court in *McMahon* alone appears to have condoned a recovery in excess of actual damages sustained. 487 S.W.2d at 372.

Apart from *McMahon*, the cases discussed stand for the proposition that an insurer cannot use an offset clause to avoid paying the minimum amount of UM coverage required by statute when to do so would reduce the insured's recovery of actual damages. Each case is qualified by the fact that the insured's damages exceeded all available sources of reimbursement and double recovery was not in question. Our case differs from these cases because Laurence's damages are less than the combined limits of her PIP and UM coverages. The case most like Laurence's is *American Motorists Insurance Co. v. Briggs*, in which the supreme court considered the effect of an other-insurance clause when the amount of damages the insured sustained was less than the limits of both policies together. 514 S.W.2d 233 (Tex. 1974).

In *Briggs*, Mr. and Mrs. Briggs were riding in a car owned by Mr. Briggs' employer when they were injured by an uninsured driver. Both the employer and the Briggses had insurance policies providing $10,000 per person in UM coverage. Mr. Briggs' damages were $13,500 and Mrs. Briggs' were $7,250. The employer's insurer paid the Briggses $5,750 each, and the Briggses claimed the remainder of their actual damages from their own insurer. *Briggs*, 514 S.W.2d at 234.

The supreme court distinguished the case from *Ranzau* in that the total damages suffered by each of the Briggses were less than the total coverage available if both policies applied. *Id.* at 235. The court then held that, when UM coverage exists, the insured can recover under the policy for actual damages to the extent of the policy limits, without regard to the existence of other insurance. If coverage exists under two or more policies, liability on the policies is joint and several to the extent of the insured's actual damages, subject to the qualification that no insurer can be required to pay more than the policy limits. *Id.* at 235–36.

The court calculated the amount the Briggses' insurer owed by subtracting from

Mr. and Mrs. Briggs' actual damages the amount the employer's insurer had paid each. The Briggses' insurer was liable for the remainder of the actual damages each sustained. *Id.* at 236. Because the remaining damages were less than the required minimum UM coverage of $10,000 per person, the Briggses' insurer was not required to pay that minimum to each of the Briggses.

*Briggs* embodies the principle that when multiple UM coverages exist, which together exceed the insured's actual damages, the total amount of UM benefits paid to the insured is limited to the insured's actual damages. This Court applied the principle to a similar case in which the combined UM coverages exceeded actual damages to the insured. *See Employers Casualty Co. v. Sloan,* 565 S.W.2d 580, 585 (Tex.Civ.App.— Austin 1978, writ ref'd n.r.e.).

We believe that, despite the holding in *Dabney v. Home Insurance Co.,* the principle of *Briggs* applies to the case here. 643 S.W.2d 386 (Tex.1983). In *Dabney,* the supreme court held that the car owner's insurer could not offset PIP payments it had paid the owner and his passengers against UM benefits they claimed. 643 S.W.2d at 389. Likening PIP coverage to medical payments coverage, the court based its holding on *Westchester,*[3] but it made no mention of either the total amount of damages sustained by the insureds or the amount of the policy coverages. Because *Dabney* does not expressly decide the issue considered in *Briggs* and present in this case, we do not apply it here. *See also Lucas,* 678 S.W.2d at 736 (without stating total amount of damages, court held that *Dabney* prohibited insurer from offsetting PIP benefits against UM payments).

Our review of the cases persuades us that the clause here, allowing State Farm to off-set PIP benefits against UM benefits to prevent a double recovery, violates neither the Insurance Code nor Texas' public policy.[4] The clause furthers the legislature's goal of protecting those harmed by uninsured motorists from financial loss, but only to the extent of their actual losses. We find nothing in the statutes that evinces an intent of the legislature to permit a double recovery. We necessarily limit our holding to a situation in which the insured's actual damages are less than the combined PIP and UM coverages.[5] Our holding comports with the views of several commentators on insurance law. *See* 12A Mark S. Rhodes, *Couch on Insurance 2d* § 45:652, at 212–13 (Rev. ed.1981) (goal of UM coverage, to make claimant whole but not allow double recovery, may allow the amount recoverable to be reduced by the amount received from another source); 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 14.5, at 690–91 (2d ed.1985) (reducing UM benefits by amount of no-fault benefits is justified to avoid double recovery).

## CONCLUSION

Because we conclude that the trial court correctly granted State Farm's summary-judgment motion and denied Laurence's motion, we overrule Laurence's point of error. We affirm the judgment of the trial court.

---

3. *Westchester Fire Ins. Co. v. Tucker,* 512 S.W.2d 679, 685–86 (Tex.1974).

4. Although we do not adopt the reasoning, we concur with the results reached in *James v. Nationwide Property & Casualty Insurance Co.,* 786 S.W.2d 91, 94 (Tex.App.—Houston [14th Dist.] 1990, no writ), and *Kim v. State Farm Mutual Automobile Insurance Co.,* 966 S.W.2d 776, 779 (Tex.App.—Dallas 1998, no pet.).

5. The PIP offset we consider in this appeal involves two provisions enacted by the Texas legislature, namely the PIP and UM statutes. The remaining benefits the clause purports to offset are not creatures of statute subject to the analysis we employ here, and we express no opinion on the validity of those purported offsets.