Kimberly VERHOEV, Appellant,

v.

PROGRESSIVE COUNTY MUTUAL
INSURANCE COMPANY,
Appellee.

No. 2–08–055–CV.

Court of Appeals of Texas,
Fort Worth.

July 30, 2009.

Law Offices of Ben C. Martin, LLP and Ben C. Martin and Thomas Wm. Arbon, Dallas, TX, for Appellant.

Ekvall & Bryne, LLP and Erik E. Ekvall and Robert A. Wells, Dallas, TX, for Appellee.

Panel: GARDNER and WALKER, JJ. and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

## OPINION

ANNE GARDNER, Justice.

In this insurance coverage case, at issue are both the liability and uninsured/underinsured motorist ("UM/UIM") coverages under a Texas personal auto policy. Appellant Kimberly Verhoev complains of summary judgments in favor of Appellee Progressive County Mutual Insurance Company and denial of her own motions for summary judgment regarding both coverages.

### Background Facts

The facts are undisputed. Progressive issued a Texas personal auto policy to Glenn Verhoev and Kimberly Verhoev. The declarations page of the policy listed both Glenn and Kimberly as named insureds. The policy provided liability insurance coverage with limits of $250,007 per person and UM/UIM motorist coverage with benefits up to the same limits for two vehicles listed on the policy: Glenn

Verhoev's 2002 Dodge Ram pick-up truck and Kimberly Verhoev's 1997 Ford Ranger pick-up truck. Glenn and Kimberly were divorced prior to issuance of the policy and were not married at the time of the accident in question.

While the policy was in force, Kimberly allegedly sustained severe injuries in a single-vehicle accident while she was a passenger in the Dodge Ram pick-up truck owned and driven by her ex-husband, Glenn, when his vehicle left the road, rolled, and collided with a fence, a utility pole, and a tree. Kimberly pursued a liability claim against Glenn and also sought underinsured motorist benefits from Progressive under the policy. Progressive denied coverage for the underinsured motorist benefits and tendered $20,000 to Kimberly as the maximum amount allowable under the liability portion of the policy.

### Kimberly's Suit

Kimberly sued Progressive, alleging breach of contract, common law breach of good faith and fair dealing, and violations of the DTPA and Texas Insurance Code based upon Progressive's alleged wrongful denial of her claim for the underinsured motorist benefits under Progressive's policy. Kimberly added Glenn as a defendant, alleging damages based on his alleged fault in causing the accident. Progressive responded with a cross-claim for declaratory judgment against both Glenn and Kimberly, seeking a judicial declaration that any obligation under its liability coverage to indemnify Glenn for Kimberly's bodily injuries was limited to $20,000.

### The Summary Judgments

Progressive filed traditional motions for summary judgment on Kimberly's underinsured motorist benefits claim and her extra-contractual claims and on Progressive's declaratory judgment cross-claim,

seeking to establish that there was no coverage for Kimberly for underinsured motorist benefits and to limit Kimberly's recovery under the liability portion of the policy to $20,000. Kimberly filed cross-motions for summary judgment on her underinsured motorist claim and Progressive's declaratory judgment claim. The trial court granted all three of Progressive's summary judgment motions, denied both of Kimberly's, and severed and abated Kimberly's claims against Glenn, making the court's rulings on the summary judgments final and appealable.

**Issues**

With respect to liability coverage for Glenn as to Kimberly's claim for her bodily injuries, and despite the policy limit per person of $250,007 under Part A of the policy, Progressive sought by its declaratory judgment action to limit the amount payable to Kimberly to $20,000 based upon exclusion C, which states that Progressive "does not provide Liability Coverage for you or any family member for bodily injury to you or any family member, except to the extent of the minimum limits of Liability Coverage required by ... [the] Texas Motor Vehicle Safety–Responsibility Act." By its motion for summary judgment on that coverage, Progressive contended that exclusion C, commonly referred to as the "family-member exclusion," applied to limit liability coverage for Glenn, as a named insured, for bodily injury to Kimberly, also a named insured, except to the extent of the minimum limits. In her first, second, fifth, and sixth issues, Kimberly contends that the trial court erred by granting summary judgment to Progressive and by denying her summary judgment on this ground as to the full amount of liability limits because she is not a "family member" of Glenn.

Because Kimberly claims her damages exceed the minimum liability limit of $20,000 tendered to her, she also made a claim directly against Progressive under the policy as a "named insured," seeking to recover UM/UIM benefits up to the full amount of the policy limits. Progressive moved for summary judgment based on the definitional exclusion contained in Part C, Section D.II(1) of the policy, stating that " 'uninsured motor vehicle' does not include any vehicle ... [o]wned by or furnished or available for the regular use of you or any family member." Progressive prevailed in the trial court on the ground that the 2002 Dodge Ram driven by Glenn at the time of the accident was owned by Glenn, a named insured and, therefore, was excluded from the definition of an "uninsured [or underinsured] motor vehicle." In her third and seventh issues, Kimberly contends that the trial court erred by granting summary judgment to Progressive on her breach of contract claim for denial of underinsured motorist benefits and by failing to grant her motion for summary judgment up to the full amount of the UM/UIM policy limit of $250,007.

**Applicable Policy Provisions**

The policy's declarations page lists Glenn and Kimberly each as "named insured" with separate premiums charged for coverage on each vehicle. The policy lists Glenn's Dodge Ram as a covered vehicle for liability coverage with policy limits of $250,007 per person and $500,007 per accident for which Progressive charged a premium of $510. It recites UM/UIM motorist bodily injury coverage with limits on Glenn's truck of $250,007 per person and $500,007 per accident for which Progressive charged a premium of $25. The policy also lists Kimberly's 1997 Ford Ranger as a covered vehicle with liability limits of $250,007 per person and $500,007 per accident, for a premium charge of $240, and lists UM/UIM motorist bodily injury cov-

erage on Kimberly's vehicle with limits of $250,007 per person and $500,007 per accident for a separate premium charge of $25. The body of the policy contains the following standard provisions:

### AGREEMENT

In return for payment of the premium and subject to all terms of this policy we agree to insure you as follows:

### DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations, and

2. The spouse if a resident of the same household.

. . . .

D. "Family member" means a person who is a resident of your household and related to you by blood, marriage or adoption. The definition includes a ward or foster child who is a resident of your household, and also includes your spouse even when not a resident of your household during a period of separation in contemplation of divorce.

. . . .

G. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

. . . .

### PART A—LIABILITY COVERAGE
### INSURING AGREEMENT

A. We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident.

. . . .

B. "Covered person" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto. . . .

2. Any person using **your covered auto.**

. . . .

### EXCLUSIONS

C. We do not provide Liability Coverage for you or any **family member** for bodily injury to you or any **family member,** except to the extent of the minimum limits of Liability Coverage required by Texas Civil Statutes, Article 6701h, entitled "Texas Motor Vehicle Safety–Responsibility Act."

. . . .

### PART C—UM/UIM MOTORISTS COVERAGE
### INSURING AGREEMENT

A. We will pay damages which a covered person is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by a **covered person,** or **property damage,** caused by an accident. The owner or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**

. . . .

B. "Covered person" as used in this Part means:

1. You or any family member;

2. You or any person occupying your covered auto;

. . . .

D. I. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type,

. . . .

4. Which is an underinsured motor vehicle. An underinsured motor vehicle is one to which a liability bond or policy applies at the time of the accident, but its limit of liability either:

**a.** Is not enough to pay the full amount the **covered person** is legally entitled to recover as damages; or

**b.** has been reduced by payment of claims to an amount which is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

**II.** However, **"uninsured motor vehicle"** does not include any vehicle or equipment

**1.** Owned by or furnished or available for the regular use of you or any **family member.** [Emphasis in original.]

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). The reviewing court should render the judgment that the trial court should have rendered. *Id.*

## Analysis

 We construe insurance policies according to the same rules of construction that apply to contracts. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex.2008); *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997). In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the policy's language. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). If an insurance contract uses unambiguous language, we must enforce it as written. *Progressive County Mut. Ins. Co. v. Kelley,* 284 S.W.3d 805, 806–08 (Tex. 2009); *Don's Bldg. Supply,* 267 S.W.3d at 23. If a contract is susceptible to more than one reasonable interpretation, or if its meaning is uncertain or doubtful, we will resolve any ambiguity in favor of coverage. *Kelley,* 284 S.W.3d at 808–09. However, if the policy language is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). We give policy terms their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning. *Don's Bldg. Supply,* 267 S.W.3d at 23 (citing *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 736 (Tex.1990)). No one phrase, sentence, or section of the policy should be isolated from its setting and considered apart from the other provisions. *Id.* In addition, we must give the policy's words their plain meaning, without inserting additional provisions into the contract. *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Crocker,* 246 S.W.3d 603, 606 (Tex.2008)).

The parties disagree about the meaning of exclusion C of Part A, the policy's liability coverage, as well as the exclusionary definition contained in Section D. II(1) of Part C, of the policy's UM/UIM motorist coverage. These two exclusions are sometimes referred to as "family-member exclusions" because they both exclude coverage for vehicles owned by family members.

See, e.g., Nat'l County Mut. Fire Ins. Co. v. Johnson, 879 S.W.2d 1, 1–2 (Tex.1993); Charida v. Allstate Indem. Co., 259 S.W.3d 870, 873 (Tex.App.-Houston [1st Dist.] 2008, no pet.). But here, it is not the term "family member" that is in question because it is undisputed that Glenn and Kimberly are not family members. Rather, the dispute centers on the meaning of the word "you" as used in the relevant exclusions.

**Liability Coverage**

Progressive argues that because the policy defines "you" as "the 'named insured' shown in the Declarations" and Glenn and Kimberly are listed as "named insured" in the Declarations, the term "you" means Glenn in the context of exclusion C as the insured for whom liability coverage is provided and Kimberly as the insured claiming bodily injury. Under Progressive's interpretation of the policy, Glenn's liability coverage for bodily injury to Kimberly is limited to $20,000, the minimum limits of liability coverage required by the Texas Motor Vehicle Safety Responsibility Act at the time the policy was issued. According to Progressive, substituting the appropriate names for "you," liability exclusion C changes from

> We do not provide Liability Coverage for **you** or any family member for bodily injury to **you** or any family member, except to the extent of the minimum limits of Liability Coverage required by [Texas law]. [Emphasis added.]

to

> We do not provide Liability Coverage for **Glenn** ... for bodily injury to **Kimberly** ..., except to the extent of the minimum limits of Liability Coverage required by [Texas law]. [Emphasis added.]

■ Kimberly contends that Progressive erroneously denied any liability coverage based on exclusion C because she was not a "family member." But it is undisputed that Kimberly was not a family member as defined in the policy because she was not a resident of Glenn's household or related to him by blood, marriage, or adoption. That is not the issue. As Progressive points out, exclusion C does not apply only to limit liability coverage for claims made by or against family members. It also limits liability coverage "for you" for bodily injury "to you." The term "you" is defined as "named insured." The real issue is whether "you" means Glenn or Kimberly or both because each was listed as "named insured" in the policy.

■ Kimberly complains that Progressive should not be able to "pick and choose" which named insured's name goes where in the exclusion in substitution of the word "you." She urges that Glenn's name could just as reasonably be inserted as Kimberly's in both places where the word "you" appears. Applying common grammar rules, Kimberly's argument seems to have merit at first glance. The antecedent to a pronoun should ordinarily be the closest appropriate noun. *See* Bryan A. Garner, *Garner's Modern American Usage*, 523–24 (2003). There is no antecedent noun contained in the exclusion, itself, to which the pronoun "you" can refer. The definition of "you" in the policy as "the named insured" merely refers the reader back to Glenn or Kimberly, as both are designated as "named insured." The pronoun "you" fails, standing alone, to distinguish which of the two named insureds is the referent antecedent to be substituted. "When an antecedent is not clearly identified—especially in sentences with more than one possible referent—the meaning of the sentence is ambiguous." *State Farm Mut. Auto. Ins. Co. v. Estate of Blanchard*, No. 1:06CV345–P–D, 2008 WL 4187948, at *8 (N.D.Miss. Sept. 8, 2008). If there were no other language in

the exclusion distinguishing between antecedents for "you" as it appears in two places in the exclusion, we might be constrained to agree with Kimberly's suggested interpretation that it refers to Glenn in both places. *See Cooper Indus., LLC v. Am. Int'l Specialty Lines Ins. Co.,* 273 Fed.Appx. 297, 305–06 (5th Cir.2008) (holding that, to construe "you" and "your" in a policy covering multiple insureds as having different meanings in different places without a change in antecedent would be unreasonable).

■■■■■■ But courts do not interpret policy terms in a vacuum. The issue is whether the policy applies to a particular liability claim. The exclusion is contained in the liability coverage portion of the policy. The summary judgment grants a declaratory judgment that Progressive's obligation to indemnify Glenn is limited to $20,000 for the claim for bodily injury asserted by Kimberly against him.[1] In this context, the exclusion, itself, distinguishes between and provides the basis for determining which named insured is the antecedent for "you" in both places in the exclusion. The first part of the exclusion identifies Glenn as the first "you" with respect to liability coverage because it is the liability coverage for Glenn that is in question and the exclusion states, "We do not provide liability coverage for you. . . ." When a claim is made against one who is insured under a liability policy, that one "is the 'insured' for the purpose of determining the company's obligations with respect to such claim." *Commercial Standard Ins. Co. v. Am. Gen. Ins. Co.,* 455 S.W.2d

714, 721 (Tex.1970) (interpreting policy with multiple "insureds").

■■■■ The second part of the exclusion states ". . . for bodily injury to you. . . ." The second "you" clearly refers to Kimberly as named insured because she is the one asserting a claim for bodily injury. Glenn is not making a claim for bodily injury, but Kimberly is. Kimberly is in the posture of an injured third party in asserting a claim against Glenn. She is not seeking liability coverage as an insured. Although the policy does not contain a severability of interests clause providing that it is to be interpreted separately as to each insured, the common law "doctrine of severability" holds that, even in absence of such a clause, where a policy uses the term "the insured" when there is more than one insured, an exclusion is to be applied to each insured separately, with the term "the insured" applying *only to the insured seeking coverage. See id.* (noting substantial authority, even prior to addition of express severability of interests clause in some policies, that rights of each insured are to be determined as if there is no other person protected thereby); *see also Cooper Indus., LLC,* 273 Fed.Appx. at 305–06 (holding better-reasoned cases adopt restrictive interpretation of "the insured" as *only the party seeking coverage* under the policy).

We agree with Progressive that Glenn's name is thus properly inserted as the first "you," the only named insured whose liability coverage is in question; that Kimberly's name is properly substituted for the second "you," the named insured

---

1. Progressive has not challenged its duty to defend Glenn nor its duty to pay any judgment against Glenn up to $20,000. Because no facts are alleged or asserted that would negate Progressive's obligation to indemnify Glenn up to that amount, we conclude that the issue of Progressive's duty to indemnify Glenn for any additional amount is justiciable. *See Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997) (discussing need in some cases to allow determination of coverage issues including duty to indemnify and to allow third-party claimant to participate prior to adjudication of insured's liability).

claiming bodily injury; and that exclusion C thus applies to limit liability coverage for Glenn to $20,000 for Kimberly's bodily injury claim.

Kimberly offers no argument or authorities as to why the definitional exclusion is invalid or against public policy. *See Liberty Mut. Fire Ins. Co. v. Sanford*, 879 S.W.2d 9, 10 (Tex.1994) (explaining scope of plurality opinion in *Nat'l County Mut. Fire Ins. Co.*, 879 S.W.2d at 3–5, holding former auto policy exclusion barring liability coverage for "you or any family member for bodily injury to you or any family member" void only up to the minimum amount of liability coverage mandated by law); *see also Charida*, 259 S.W.3d at 873; *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 329 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). We hold that the trial court correctly granted summary judgment for Progressive on its declaratory judgment cross-action limiting its obligation under Glenn's liability coverage to $20,000 and correctly denied Kimberly's motion for summary judgment on this coverage. We overrule Kimberly's first, second, fifth, and sixth issues.

### UM/UIM motorist coverage

Article 5.06–1(1) of the Texas Insurance Code, in effect at the time of the alleged accident, required that automobile liability insurance must provide coverage for an insured for protection against uninsured and underinsured vehicles unless the insured rejected such coverage in writing.[2] Originally enacted in 1967 to provide for "uninsured" motorist protection, the statute was amended in 1977 to add "underinsured" motorist coverage. *See Stracener*

*v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex.1989) (tracing legislative history and public policy underlying statute); *Laurence v. State Farm Mut. Auto. Ins. Co.*, 984 S.W.2d 351, 352 (Tex.App.-Austin 1999, pet. denied) (tracing history of uninsured motorist coverage in Texas).

Standard personal auto liability policies now provide first-party UM/UIM coverage for insureds as prescribed by the statute unless rejected by the insured, placing the insurer in the shoes of a financially irresponsible or underinsured motorist as a source of payment to the insured and other covered persons. *Laurence*, 984 S.W.2d at 352; *see also First Gen. Realty Corp. v. Md. Cas. Co.*, 981 S.W.2d 495, 502 (Tex. App.-Austin 1998, pet. denied) ("[U]ninsured motorist coverage arises from a first-party contractual relationship; unlike liability or indemnity coverage, it is not derived from a successful claim by a third party."). The policy's UM/UIM coverage provides that Progressive "will pay damages which a covered person is legally entitled to recover from the owner of an uninsured motor vehicle because of bodily injury sustained by a covered person, caused by an accident." The term "covered person" is defined as "you or any family member [occupying any car] and any other person occupying your covered auto." The damages recoverable by a covered person must arise out of ownership, maintenance, or use of the uninsured or underinsured motor vehicle.

The legislature specifically authorized the Texas Department of Insurance to exclude certain vehicles from the standard policy definition of an uninsured or underinsured vehicle.[3] The definition of "unin-

---

2. *See* Act of May 27, 1981, 67th Leg., R.S., ch. 380, § 1, 1981 Tex. Gen. Laws 1002, 1002, *repealed by* Act of May 24, 2005, 79th Leg. R.S., ch. 727, § 18, 2005 Tex. Gen. Laws 1752, 2186–87 (effective April 1, 2007) (current version at Tex. Ins.Code Ann. § 1952.101

(Vernon 2007)) (the UM/UIM statute). Because the policy here was issued in 2004, we will apply the version of the statute in effect at that time.

3. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 296, § 21.08, 2003 Tex. Gen. Laws 907, 950–

sured motor vehicle" in the standard policy includes a land motor vehicle "which is an underinsured motor vehicle," i.e., "one to which a bond or liability policy applies at the time of the accident but its limit of liability is ... not enough to pay the full amount the covered person is legally entitled to recover as damages." Section D.II(1) of the policy form excludes from the definition of "uninsured [or underinsured] motor vehicle" any vehicle "owned by or furnished or available for the regular use of you or any family member."

Under Progressive's theory, because the policy defines "you" as "the 'named insured' shown in the Declarations," and because the vehicle Kimberly was occupying at the time of the accident was owned by Glenn, the term "you" means Glenn in the context of the definitional exclusion. Progressive contends that, after substituting the appropriate name for "you" in the definitional exclusion of certain vehicles from uninsured motorist coverage, paragraph D.II changes from

> However, "uninsured motor vehicle" does not include any vehicle or equipment
>
> 1. Owned by or furnished or available for the regular use of **you** or any family member. [Emphasis added.]

to

> However, "uninsured motor vehicle" does not include any vehicle or equipment

1. Owned by or furnished or available for the regular use of **Glenn** or any family member. [Emphasis added.]

Progressive thus contends that Kimberly is not entitled to underinsured motorist benefits because her bodily injuries arose out of ownership, maintenance, or use of Glenn's vehicle, and because Glenn is the "you" who owned the Dodge Ram, that vehicle is excluded from being an "uninsured motor vehicle." Progressive's position assumes that Kimberly is claiming coverage as a "covered person" under the UM/UIM because she was occupying Glenn's vehicle. Kimberly argues that the term "you" in the definitional exclusion refers to her, not Glenn. Under her interpretation, she is not seeking to recover under Glenn's UM/UIM motorist coverage because she was occupying Glenn's vehicle but that she is a "covered person" because she is a "you" (a named insured) under her own separately-purchased coverage.[4]

Kimberly's underinsured motorist benefits claim is a first-party claim directly against Progressive alleging a right to recover under her own UM/UIM coverage in the policy as issued to her as "named insured." Thus, she contends that because the 2002 Dodge Ram being driven by Glenn and claimed by her to be underinsured was *not* owned by her (and it is undisputed that it was not furnished or

---

51 (effective June 11, 2003), *repealed by* Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18, 2005 Tex. Gen. Laws 1752, 2186–87 (effective April 1, 2007) (current version at Tex. Ins. Code Ann. § 1952.101 (Vernon Supp. 2008)) (authorizing Department, in promulgating standard forms for UM/UIM motorist coverage, to "define 'uninsured motor vehicle' to exclude certain motor vehicles whose operators are in fact uninsured").

4. Because Kimberly is a named insured with UM/UIM coverage on her own vehicle under the policy, she is a "you" and, therefore, has coverage while occupying any vehicle, which would include Glenn's truck. *See Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679, 684 (Tex.1974) (stating purchase of basic uninsured motorist coverage entitles named insured to protection in the stated limits while occupying the insured auto or any non-owned auto).

available for her regular use), the exclusionary language does not apply. Under Kimberly's interpretation, the definitional exclusion of certain vehicles from paragraph D.II as applied to her coverage changes from

However, "uninsured motor vehicle" does not include any vehicle or equipment

1. Owned by ... **you** [Emphasis added.]

to

However, "uninsured motor vehicle" does not include any vehicle or equipment

1. Owned by ... **Kimberly.** [Emphasis added.]

Kimberly invokes two cases in support of her interpretation. In *Briones v. State Farm Mutual Automobile Insurance Co.,* 790 S.W.2d 70, 73–74 (Tex.App.-San Antonio 1990, writ dism'd), the parties assumed that the exclusion applied, but the court held that its application would contravene the purpose of the uninsured motorist statute when a claimant sought benefits under his own policy for injury in a single-vehicle collision while occupying a truck owned by his uninsured employer and driven by an uninsured co-employee, even though the truck was also "furnished for his regular use." And in *Fontanez v. Texas Farm Bureau Insurance Cos.,* 840 S.W.2d 647, 649 (Tex.App.-Tyler 1992, no writ), the court noted that the exclusion was "patently clear," again holding that it was invalid under the specific circumstances in which benefits were sought under the named insured's policy for her death when she was struck by her own car door as a thief tried to steal her auto.

Those cases are not helpful to Kimberly on her policy interpretation argument. In both cases, the courts agreed that the definitional exclusion would apply but decided that to apply it under the specific circum-stances of those cases would contravene the public policy underlying the UM/UIM motorist statute. *Fontanez,* 840 S.W.2d at 650; *Briones,* 790 S.W.2d at 73–74.

Progressive argues that the definitional exclusion is clear, unambiguous, and has been upheld by numerous courts, including this court. But Progressive's cases are equally unhelpful to it for the same reason. In none of those cases did the claimants raise issues as to the provision's interpretation. The issue in each case, as in those cited by Kimberly, was whether the definitional exclusion contravened the policy underlying the UM/UIM motorist statute when injured family members or guests attempted to recover under both the liability and UM/UIM provisions of the same policy issued to the owner of the vehicle in which they were riding. In each case, the court held that the provision was valid to limit liability coverage to the minimum limits required by law. *See, e.g., Charida,* 259 S.W.3d at 874 (holding definitional exclusion valid as to claim by daughter passenger under policy issued to father as named insured, after collecting reduced minimum liability limits of $20,000 available under same policy after family exclusion under liability portion of policy was applied); *see also Farmers Tex. County Mut. Ins. v. Griffin,* 868 S.W.2d 861, 869 (Tex.App.-Dallas 1993, writ denied) (holding provision valid as to claims by family member passengers who had settled their liability claims against named insured driver); *Bergensen v. Hartford Ins. Co. of the Midwest,* 845 S.W.2d 374, 377 (Tex.App.-Houston [1st Dist.] 1992, writ ref'd) (holding exclusion valid as to named-insured wife after settlement of liability claim against named-insured husband driver); *State Farm Mut. Ins. Co. v. Conn,* 842 S.W.2d 350, 351 (Tex.App.-Tyler 1992, writ denied) (holding "no doubt" as to meaning of exclusion and that it was valid as to unrelated passengers in auto driven by

named insured where they had recovered maximum amount of liability benefits under policy); *Rosales v. State Farm Mut. Auto. Ins. Co.*, 835 S.W.2d 804, 805 (Tex. App.-Austin 1992, writ denied) (holding exclusion valid as to unrelated guests occupying covered auto after recovering full amount of liability coverage to named insured driver of vehicle).[5]

One rationale of those cases is that the purpose of UM/UIM motorist coverage is to protect the insured, his family members, and guests from "negligence of others," meaning strangers to the policyholder, and not to protect against the negligence of the insured's own family members. *See Charida*, 259 S.W.3d at 875 (citing *Bergensen*, 845 S.W.2d at 375). A second rationale is that UM/UIM motorist coverage is not meant to protect others from the insured, and allowing an occupant to recover under both the liability and the UM/UIM portion of the same policy on the family car would effectively convert the UM/UIM coverage into a second layer of liability coverage. *See, e.g., id.* at 876 (citing *Griffin*, 868 S.W.2d at 868). Neither the insurer nor the insured contemplated recovery under both sections of the same policy in the cost of the UM/UIM motorist coverage. *Id.*

None of the cases relied upon by either Kimberly or Progressive, nor any we have found, have addressed the meaning of the term "you" as used in the definitional exclusion. Nor have any of the cases involved policies issued to two named insureds, covering vehicles separately owned by each insured, and where UM/UIM coverage was purchased for each vehicle.[6]

Kimberly seeks damages for her bodily injuries under Glenn's liability coverage, but she is not seeking underinsured benefits under Glenn's UM/UIM motorist coverage. Rather, she is seeking to recover those benefits as a named insured under the UM/UIM coverage purchased on her own scheduled vehicle, for which she paid a separate premium. As Kimberly argues, she would be entitled to the UM/UIM motorist benefits in this case if a separate policy had been issued by Progressive solely to her as named insured because it would then be clear throughout the policy that wherever the term "you" appeared, it referred to Kimberly.[7] Thus, Kimberly argues she should not have acquired less coverage simply because her coverage is on the same policy as Glenn's.[8]

5. *See also Scarborough v. Employers Cas. Co.*, 820 S.W.2d 32, 34 (Tex.App.-Fort Worth 1991, writ denied) (followed in *Bergensen*, but in which the trial court severed the wife's liability claim against the named-insured husband, which apparently was still pending when the denial of underinsured motorist benefits was appealed and upheld under the family-member exclusion).

6. Although *Bergensen* involved two named insureds who were husband and wife and both were named insureds in the policy, the passenger wife was a "family member" of the driver of the covered vehicle in which she was a passenger, which was jointly owned, so that it was unnecessary for the court to address or interpret the term "you" in the definitional exclusion.

7. Kimberly does not contend that, because this is a multi-vehicle policy issued to multiple insureds, she is entitled to "stack" policy limits based on payment of separate premiums for both UM/UIM motorist coverages. *See Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex.1992) (reaffirming previous holdings that intra-policy stacking of UM/UIM motorist coverages based on payment of separate premiums for additional covered vehicles is not permitted, citing *Westchester Fire Ins. Co.*, 512 S.W.2d at 684). Those cases, however, do not detract from the policy language that, because she is a named insured, Kimberly qualifies as a "covered person" under her own UM/UIM coverage as a "you."

8. Exclusion A(1) of the UM/UIM motorist coverage part of the policy states that the company does not provide coverage for any person

Progressive cites several out-of-state cases for the proposition that the term "named insured" is plural. Two of the cases are not on point, and the third states, to the contrary, that the term "'assured' may be singular or plural depending on the circumstances." *Rent–A–Car Co. v. Globe & Rutgers Fire Ins. Co.*, 158 Md. 169, 148 A. 252, 257–58 (1930) (holding, where fire policy named mortgagor "and" mortgagee as "assured," their respective interests were several and independent, and contingency guarded against "was not fraud of either assured but of both" so that mortgagor's arson did not preclude recovery by mortgagee). The policy in question does not state that Glenn "and" Kimberly are named insureds, nor does it say "and/or." Their names are simply listed one under the other with the designation "Named Insured" out to the side of each. The term "you" is "[t]he 'named insured' listed in the Declarations," but it is unclear whether this means either or both or under what circumstances.

The appearance of the little word "the" in the definition provides a clue. As previously discussed, the common law "doctrine of severability" holds that, even in absence of a severability clause, where a policy uses the term "the insured" when there is more than one insured, an exclusion is to be applied to each insured separately, with the term "the insured" applying *only to the insured seeking coverage. See Commercial Standard Ins. Co.*, 455 S.W.2d at 720 (noting substantial authority, even prior to addition of express severability of

interests clause in some policies, that rights of each insured are to be determined as if there is no other person protected thereby); *see also Cooper Indus., LLC*, 273 Fed.Appx. at 305–06 (applying Texas law and holding better-reasoned cases adopt restrictive interpretation of "the insured" as *only the party seeking coverage* under the policy).[9] Consistent with that doctrine as a rule of interpretation, the definition of "you" may reasonably be construed to mean Kimberly. Under that interpretation, because Glenn's Dodge Ram was not owned by her, that vehicle is not excluded from the definition of "uninsured motor vehicle."

Absent any specific guiding case law interpreting the term "you" in the context of multiple named insureds with multiple covered vehicles in an auto UM/UIM policy, we are unable to conclude that Progressive's interpretation is unreasonable that the term "you" in the exclusion of "autos owned by you" from the definition of "uninsured motor vehicle" means Glenn as a named insured. On the other hand, we are persuaded that Kimberly's interpretation is equally reasonable—that "you" means Kimberly as a named insured making the claim against her insurer. Under her interpretation, the vehicle driven by Glenn and out of which Kimberly's injuries arose was not owned by her and, therefore, the definitional exclusion would not apply.

 Whether a contract is ambiguous is a question of law for the court to

---

(including Kimberly and Glenn) while occupying or being struck by any motor vehicle "owned by you ... which is not insured for this coverage under this policy." Thus, by purchasing the UM/UIM coverage on her auto, she at least acquired protection from uninsured or underinsured motorists while occupying her own vehicle.

9. *Cf., Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 210–11 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (op. on reh'g) (construing term "any insured" contained in auto exclusion differently from "the insured," despite separation of insureds clause, and as including all insureds, and holding that a claim against any insured would be excluded, distinguishing *Commercial Standard Ins. Co.*, 455 S.W.2d at 721–22).

decide. *Kelley–Coppedge, Inc.,* 980 S.W.2d at 464 (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995)). An ambiguity does not arise merely because the parties advance conflicting contract interpretations. *Id.* at 465. Only when, after applying the applicable rules of construction, a contract term is susceptible of two or more reasonable interpretations will the term be considered ambiguous. *Id.*

 In construing a contract, we consider how a reasonable person would have used and understood the language, taking into account the circumstances under which the contract was executed and the purposes the parties intended to accomplish. *Bituminous Cas. Corp.,* 110 S.W.3d at 213. The plain language of the policy, like that of any other contract, must be given effect when the parties' intent can be discerned from that language. *Id.* (citing *Glover v. Nat'l Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977)). However, the court must adopt the construction urged by the insured unless that construction is unreasonable, even if the construction urged by the insurer is more reasonable or appears to be a more accurate reflection of the parties' intent. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991).

Because the meaning of "you" is susceptible of two opposing reasonable interpretations under the circumstances of this case, it is ambiguous. *See Kelley,* 284 S.W.3d at 806–08; *Kelley–Coppedge, Inc.,* 980 S.W.2d at 465. We must resolve the ambiguity in favor of coverage. *See Don's Bldg. Supply,* 267 S.W.3d at 23. Resolving the ambiguity in favor of coverage requires that we substitute "Kimberly" for "you" in uninsured motorist paragraph D.II, so that the relevant provision reads,

> However, 'uninsured motor vehicle' does not include any vehicle or equipment ... [o]wned by ... **Kimberly.**

Under this construction, because the Dodge Ram was not owned by Kimberly, underinsured motorist coverage for Kimberly's injuries is not excluded by paragraph D.II.[10]

Resolving the ambiguity in favor of coverage, we hold that the trial court erred by granting summary judgment in Progressive's favor and denying Kimberly's motion for summary judgment on Kimberly's underinsured motorist claim. Because Section D.II(1) of Part C does not exclude coverage, the full policy limit per person of UM/UIM motorist coverage is available to Kimberly subject to establishing liability of Glenn and the amount of her damages. We sustain Kimberly's third and seventh issues.

Kimberly has not briefed her issue on appeal as to the summary judgment regarding her extra-contractual claims either based on denial of her UM/UIM motorist benefits or on the alternative ground that Progressive established a bona fide dispute as to coverage. Therefore, we overrule Kimberly's fourth issue complaining of the granting of summary judgment to Progressive as to Kimberly's extra-contractual claims.[11]

**10.** We do not reach Kimberly's argument that applying the definitional exclusion to preclude coverage for her in this case would contravene public policy underlying the UM/UIM motorist statute. *See Tex. Farmers Ins. Co. v. Murphy,* 996 S.W.2d 873, 878 (Tex. 1999) ("[A] court should not decide the question of public policy without first determining the contractual rights of the parties under the policy.").

**11.** *See* Tex.R.App. P. 38.1(h); *21st Century Home Mortgage v. City of El Paso,* 281 S.W.3d 83, 86 (Tex.App.-El Paso 2008, no pet.) (citing *Vickery v. Vickery,* 999 S.W.2d 342, 352–53 (Tex.1999)).

## Conclusion

We affirm the trial court's judgment granting Progressive a declaratory judgment that Progressive's policy provides Glenn liability coverage limited to $20,000 for Kimberly's claim of bodily injury against Glenn, and we affirm the denial of Kimberly's motion for summary judgment concerning Glenn's liability coverage. We affirm the award of attorney's fees to Progressive because Kimberly has not challenged that award. And we affirm the summary judgment in favor of Progressive on Kimberly's extra-contractual claims. We reverse the summary judgment denying Kimberly underinsured motorist coverage and render judgment in favor of Kimberly on her claim for underinsured motorist benefits up to the amount of the policy limit per person of $250,007.

WALKER, J. filed a dissenting and concurring opinion.

SUE WALKER, Justice, dissenting and concurring opinion.

I respectfully dissent. I would sustain Appellant Kimberly Verhoev's first, second, fifth, and sixth issues. In these issues, Kimberly challenges the trial court's declaratory judgment and summary judgment for Appellee Progressive County Mutual Insurance Company limiting Appellee's liability under a personal automobile policy it issued to her and to Glenn Verhoev as divorced individuals not residing together. Kimberly claims that because the policy provides liability insurance coverage with limits of $250,007 per person, the trial court erred by limiting Appellee's obligation to indemnify Glenn for her bodily injuries to $20,000. Appellee claims that exclusion C, quoted in the majority opinion, applies to limit liability coverage to $20,000.

The majority properly analyzes Kimberly's third and seventh issues, reversing the trial court's failure to grant summary judgment for Kimberly on her claim for uninsured/underinsured (UM/UIM) motorist coverage benefits under the policy. Concerning the UM/UIM provision, the majority concludes that because both Appellant's and Appellee's interpretations of the UM/UIM provision are reasonable, the provision is ambiguous; the majority holds that this ambiguity is to be resolved in favor of coverage and that the common law "doctrine of severability" applies.[1] Maj. Op. at 816–17.

While applying a proper and persuasive analysis of the UM/UIM provisions of the policy, the majority inexplicably fails to apply this same analysis to exclusion C in the liability portion of the policy. The majority recognizes that, applying "common grammar rules," an ambiguity exists in exclusion C. Maj. Op. at 810. The majority recognizes that the common law "doctrine of severability" applies to exclusion C. Maj. Op. at 811. But then the majority, in contradiction to the principles of law it has just set forth, fails to resolve the ambiguity in favor of coverage, fails to apply the "doctrine of severability," and summarily concludes that the second "you" in exclusion C must refer to Kimberly because she is the person who suffered bodily injury. Maj. Op. at 811 (summarily holding, "The second 'you' clearly refers to Kimberly as named insured because she is the one asserting a claim for bodily injury. Glenn is not making a claim for bodily injury, but Kimberly is."). The majority misses the point. Applying the analysis

---

1. In the interest of brevity, I omit the citations to the legal authorities relied upon by the majority opinion. The majority opinion cites the applicable and controlling law; it simply misapplies that law to exclusion C.

dictated by the law and, in fact, the same analysis relied upon by the majority in addressing the UM/UIM provisions of the policy, because Glenn is not making a claim for bodily injury, exclusion C does not apply. And because Kimberly is not seeking liability coverage as an insured, exclusion C does not apply. Accordingly, I would reverse the trial court's declaratory judgment and summary judgment for Appellee limiting Appellee's obligation under Glenn's liability coverage to $20,000 and render judgment that the limit of Appellee's obligation under Glenn's liability coverage is up to $250,007.

I concur with the majority's reversal of the trial court's summary judgment denying Kimberly underinsured motorist coverage and with the majority's rendition of judgment in favor of Kimberly on her claim for underinsured motorist benefits up to the policy limit per person of $250,007.

