Pat FONTANEZ, Administratrix of the Estate of Bessie Viola Chipman, Appellant,

v.

TEXAS FARM BUREAU INSURANCE COMPANIES and Southern Farm Bureau Casualty Insurance Company, Appellees.

No. 12–90–00341–CV.

Court of Appeals of Texas, Tyler.

Sept. 10, 1992.

---

Robert Ray, Tyler, for appellant.

Sherwin A. Winniford, Waco, for appellees.

## MOTION FOR REHEARING

SMITH, Justice, (retired).

Appellant's motion for a rehearing is granted. Our opinion and judgment issued on July 27, 1992 are withdrawn and the following opinion is substituted in lieu thereof.

The sole issue in this appeal is whether the Texas standard automobile insurance policy provision which excludes an insured's vehicle from the definition of "uninsured motor vehicle" is a valid and enforceable provision when applied to the facts of this case. Specifically, can an insured recover uninsured benefits when injured by an uninsured thief who is operating the insured's own vehicle?

The trial court held as a matter of law that the vehicle in question was not an "uninsured motor vehicle" as defined in the policy and entered a take-nothing judgment.

This case was tried on stipulated facts. The insured, Bessie Viola Chipman, was killed when she was struck by the door of her own vehicle as Kelvin Corneil Street was attempting to steal it. Street put Chipman's body in the vehicle and drove to another location where he disposed of her body and ultimately burned the vehicle.

At the time of the incident, Chipman's vehicle was insured with Southern Farm Bureau Casualty Insurance Company and Texas Farm Bureau Insurance Companies, including personal injury protection coverage (PIP) and uninsured motorist/underinsured motorist coverage. Appellant, as representative of the estate of Chipman, brought this suit against Appellees after the Appellees had denied coverage of benefits under the uninsured provisions of Chipman's policy. The basis of the Appellees' denial of coverage was that Chipman's vehicle was not an "uninsured motor vehicle" by definition. The trial judge agreed.

In a single point of error, Appellant contends that the Texas standard automobile policy exclusion of the insured's vehicle is void and unenforceable when applied to the facts of this case because it does not comport with the legislative intent in the Texas Uninsured Motor Statute.

The statute in question is TEX.INS.CODE ANN. art. 5.06–1(2)(c) (Vernon 1981), which reads:

The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured and underinsured motorist coverages. The Board may also, in such forms, define "uninsured motor vehicle" to exclude certain motor vehicles whose operators are in fact uninsured.

Pursuant to the authority given it in Article 5.06, the State Board of Insurance in the insuring agreement of the policy, defined an uninsured vehicle as:

an uninsured motor vehicle is defined as a land motor vehicle or trailer of any type.

4. which is an underinsured vehicle. An underinsured vehicle is one to which a liability bond or policy applies but its limit of liability:

a. is less than the limit for this coverage;

b. has been reduced by payment of claims to an amount less than the limits of liability under this coverage.

However, uninsured vehicle does not include any vehicle or equipment;

1. *owned by or furnished or available for the regular use by any family member.*

(Emphasis added.)

It is patently clear that as the policy defines uninsured motor vehicle, there is no uninsured coverage for the insured's own vehicle. However, the question under the facts of this case is whether that definition contravenes the legislative intent behind Article 5.06.

■ Article 5.06 does not grant unbridled authority to create and define policy terms. In fact, those clauses in insurance policies which are not consistent with and do not further the purpose of Article 5.06–1 are invalid. *Stracener v. United Services Automobile Association*, 777 S.W.2d 378, 384 (Tex.1989). Appellees contend that the standard automobile policy is in accord with the express language of the statute and that the definition of "uninsured motor vehicle" is clear and unambiguous and therefore should be given its plain, ordinary meaning, citing *Puckett v. U.S. Fire Insurance Company*, 678 S.W.2d 936 (Tex. 1984). They urge this Court to follow the holding of the Fort Worth Court of Appeals in *Scarborough v. Employers Casualty Company*, 820 S.W.2d 32 (Tex.App.—Fort Worth 1991, no writ).

In *Scarborough*, the court held that the definition of "uninsured motor vehicle" which excluded any vehicle owned by or furnished or available for the regular use of the insured or any family member was valid and enforceable. *Id.* However, we believe *Scarborough* is distinguishable from the facts of this case. In *Scarborough*, the Appellant was a passenger in the vehicle and the driver was her husband. Both Appellant and her husband were insured under an automobile policy issued by Employers Casualty Co. Apparently, Appellant's husband, while driving, lost control of the vehicle which jumped a median into oncoming traffic, and an accident occurred.

In *Scarborough*, the court recognized the public policy argument in *Stracener*, however, the court found *Stracener* to be factually different. It pointed out that because Appellant or her husband driver were the insured's own family, the negligence of "others" meant strangers to the insured's family, not the Appellant's husband.

The facts of *Scarborough* are not comparable to the facts in this case. In *Scarborough*, the driver was an insured. In the present case, the driver was not only not an insured but was a thief stealing the insured's car. Chipman, the insured, did not grant permission to the thief to operate her car and Chipman was not in control of her car at the time of the accident.

Appellant alleges the case more comparable to the present case is *Briones v. State Farm Mutual Automobile Ins. Co.*, 790 S.W.2d 70 (Tex.App.—San Antonio 1990, writ denied). Briones was injured while a passenger in a one vehicle accident. The vehicle was an uninsured truck owned by his employer which was being driven by an uninsured fellow employee. Briones claims for uninsured benefits under the provisions of his own personal automobile policy were denied by State Farm Mutual. His automobile policy contained a clause in the uninsured motor vehicle section similar to the one involved in this case. It stated, "uninsured motor vehicle does not include any vehicle or equipment: ... owned by or *furnished or available for the regular use of you* or any family member." (Emphasis added.)

In *Briones*, although the vehicle was regularly furnished for Briones' use, the court concluded that to deny him a recovery under the uninsured motorist clause of his policy would frustrate the intent of the legislature to provide protection for conscientious motorists from financial loss caused by negligent, financially irresponsible motorists. The court reasoned that it was doubtful that Briones believed he would not be protected if involved in an accident in an uninsured motorist vehicle owned by his employer and driven by uninsured co-employees.

■ We believe that the reasoning used in *Briones* is sound and is applicable to the factual situation in this case. It is unlikely that Bessie Viola Chipman realized her uninsured coverage would not apply when an uninsured thief operating her car without permission struck and killed her.

We agree with *Briones* wherein it stated that a case by case determination is required of the Texas Uninsured Motor Statute when it is necessary to ascertain whether an exclusion from the definition of an "uninsured motor vehicle" would deprive the insured of protection. Considering the unique facts in the present case, we hold that to deny the Appellant recovery under Chipman's policy would frustrate the purpose behind and defeat the intent of the Uninsured Motorist Act as well as conflict with the Supreme Court's reasoning in *Stracener*. Accordingly, we reverse the trial court's judgment and render judgment that Appellant recover from Appellees the sum of $25,000.00, prejudgment and postjudgment interest thereon as provided by law, and attorneys fees of $10,500.00.

Costs of the appeal are charged to the Appellees.