Opinion filed July 24, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00004-CV

_____

**ROBBIE DEAN ANDERSON, SR., Appellant**

**V.**

**TEXAS FARM BUREAU MUTUAL
INSURANCE COMPANY, Appellee**

**On Appeal from the 39th District Court**
**Throckmorton County, Texas**
**Trial Court Cause No. 3332-1**

## M E M O R A N D U M   O P I N I O N

Robbie Dean Anderson, Sr. appeals the trial court's judgment that granted Texas Farm Bureau Mutual Insurance Company's motion for summary judgment. The trial court ruled that Anderson take nothing on his uninsured motorist (UM) claim against his own insurer, Texas Farm Bureau. Texas Farm Bureau moved for summary judgment because the pickup that injured Anderson was not a scheduled vehicle on Anderson's policy and was owned by Anderson's adult son, Dean, who

was staying in Anderson's home at the time of the accident. Anderson claimed he was covered under his UM coverage because a thief took the pickup, which Anderson did not own, and, as the thief fled, the thief drove the pickup into Anderson and injured Anderson. We affirm.

I. *Summary Judgment Evidence*

Anderson lived at 610 Texas Street in Throckmorton, Texas. On January 23, 2010, Cameron Morris and another man were in a vehicle and drove to Anderson's home. The man exited the vehicle and got into a pickup parked in front of Anderson's home. The man started to drive the pickup off Anderson's property. When Anderson tried to stop the man, the man drove the pickup into Anderson and injured Anderson.

In his deposition, Dean testified that the man who drove the pickup was named Mark and that Mark worked for Dean's employer, Michael E. McGuffin. Anderson testified that he had met Mark and that Mark was the person who drove the pickup into him. Dean testified that he did not give Mark authorization to drive the pickup.

Dean testified that he and McGuffin co-owned the pickup and that McGuffin had insurance on the pickup, but no evidence was adduced that Mark had authorization from McGuffin to drive the pickup. Anderson did not own the pickup. The certificate of title to the pickup was not part of the summary judgment evidence. In addition, the only insurance policy adduced as summary judgment evidence was Anderson's policy.

Dean further testified that he had possession of the pickup and that McGuffin had not had possession or use of the pickup in the last six months. Dean lived with Anderson at 610 Texas Street in Throckmorton, which is where he kept the pickup. Dean said that, at the time of the accident, he lived at his father's home and that the pickup was kept there.

Texas Farm Bureau moved for summary judgment and argued that Anderson could not recover under his UM coverage because, at the time of the accident, Dean possessed or owned the pickup, which was not a scheduled vehicle on Anderson's policy, and because Dean resided with Anderson and was a family member under Anderson's policy. Consequently, Texas Farm Bureau argued that, under Part C Exclusion A.1 of the policy, Anderson was not covered for a UM claim. The trial court agreed and granted summary judgment in favor of Texas Farm Bureau. Anderson appealed.

## II. *Issue Presented*

Anderson presents a single issue on appeal. Anderson contends that Texas Farm Bureau's UM exclusion regarding a family member's vehicle does not apply because the pickup was stolen and the thief used the pickup to injure Anderson. Texas Farm Bureau counters that Anderson is precluded from any recovery under the UM provision of his policy because the pickup, which Dean possessed or owned, was not a scheduled vehicle on Anderson's policy.

## III. *Standard of Review*

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The movant for traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). When summary judgment is granted on traditional grounds, we take the evidence adduced in favor of the nonmovant as "true" and draw every reasonable inference and resolve all doubts in favor of the

nonmovant.  *Id.* at 644 (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 315 (Tex. 1987)).

The standard of review for summary judgment is well settled.  *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex. 1985); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979).  If the trial court's order on summary judgment does not specify the grounds on which it is based, the appellant must negate all grounds on appeal.  *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## IV. *Analysis*

We construe insurance policies according to the same rules of construction that apply to contracts.  *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997).  In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the policy's language.  *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).  We give policy terms their ordinary and commonly understood meaning unless the policy itself shows the parties intended a different, technical meaning.  *Don's Bldg. Supply*, 267 S.W.3d at 23 (citing *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990)).  No one phrase, sentence, or section of the policy should be isolated from its setting and considered apart from the other provisions.  *Id.*  In addition, we must give the policy's words their plain meaning, without inserting additional provisions into the contract.  *Id.* (citing *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008)).

If an insurance contract uses unambiguous language, we must enforce it as written.  *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806–08 (Tex. 2009); *Don's Bldg. Supply*, 267 S.W.3d at 23.  If we can give the policy provision a definite or certain legal meaning or interpretation, then it is unambiguous and is

4

construed as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). But if a contract is susceptible to more than one reasonable interpretation, or if its meaning is uncertain or doubtful, then it is ambiguous, and we must resolve the ambiguity in favor of coverage. *Verhoev v. Progressive Cnty. Mut. Ins. Co.*, 300 S.W.3d 803, 816 (Tex. App.—Fort Worth 2009, no pet.) (citing *Kelley*, 284 S.W.3d at 806–08; *Don's Bldg. Supply*, 267 S.W.3d at 23).

### A. UM/UIM Coverage

Uninsured and underinsured motorist coverage has two purposes. The main purpose of UM/UIM motorist coverage is to protect the insured, his family members, and guests from the "negligence of others," meaning strangers to the policyholder, and not to protect against the negligence of the insured's own family members. *Verhoev*, 300 S.W.3d at 814 (citing *Charida v. Allstate Indem. Co.*, 259 S.W.3d 870, 875 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). A second rationale is that UM/UIM motorist coverage is not meant to protect others from the insured; therefore, allowing an occupant to recover under both the liability and the UM/UIM portion of the same policy on the family car would effectively convert the UM/UIM coverage into a second layer of liability coverage. *Id.* at 814.

Texas Farm Bureau argues that there are three classes of vehicles that are set out in Exclusion A.1 to the UM coverage provision of its policy: (1) unowned vehicles; (2) owned vehicles that are insured under the policy because the insured has paid a UM/UIM premium on those vehicles for UM/UIM coverage; and (3) owned vehicles that are not scheduled vehicles under the policy and on which the insured has not paid a UM/UIM premium. Texas Farm Bureau argues that the pickup involved in the accident was in the third category.

*B. Policy Exclusion*

The Texas Farm Bureau policy UM/UIM provision provides that it will pay damages that a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person caused by an accident. But the UM/UIM provision also provides[1] in Exclusion A.1:

> A. We do not provide Uninsured/Underinsured Motorists Coverage for any person:
>
> 1. For bodily injury sustained while occupying, or when struck by, any motor vehicle or trailer of any type <u>owned by you</u> or <u>any family member</u> which <u>is not insured for this coverage under this policy</u>. (emphasis added)

The key terms are you, family member, motor vehicle owned by you, and uninsured motor vehicle.

*C. Definitions of "You," "Family Member," and "Owner"*

The Texas Farm Bureau policy "Definitions" section defines "you" as the "named insured shown in the Declarations" and the "spouse if a resident of the same household." The Texas Farm Bureau policy "Definitions" section defines "family member" as follows:

> Family member means a person who is a resident of your household and related to you by blood, marriage or adoption. This definition includes a ward or foster child who is a resident of your household, and also includes your spouse even when not a resident of your household during a period of separation in contemplation of divorce.

Household is not defined in the policy. Black's Law Dictionary defines "household" as "[a] family living together" or "[a] group of people who dwell

---

[1] We note that some of the terms of the policy appear in bold in the policy; however, for purposes of this opinion, we have not bolded those terms.

under the same roof." BLACK'S LAW DICTIONARY 857 (10th ed. 2014). Resident is not defined in the policy. Black's Law Dictionary defines "resident" as "[s]omeone who lives in a particular place." *Id.* at 1502. Under the plain meaning of the policy, Dean is a family member of Anderson because he is related by blood and lives or dwells in Anderson's home.

Likewise, ownership is not explicitly defined in the policy. Black's Law Dictionary defines "own" as "to have legal title to" or the right to "have or possess as property." *Id.* at 1280. "Owner" is defined as someone who has the right "to possess, use, and convey something." *Id.* In the policy, there are some provisions that reference vehicle ownership. The policy defines "covered auto" as including "[a]ny vehicle shown in the Declarations" and various types of vehicles on the date "you" become "the <u>owner</u>" if the vehicle is acquired during the policy period and Texas Farm Bureau is notified within thirty days. The policy also provides that a vehicle that replaces a vehicle shown on the Declarations is covered if Texas Farm Bureau is notified within thirty days of the insured's desire to cover the replacement vehicle.

A summary judgment may be based on uncontroverted testimony of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c); *Dean v. Lowery*, 952 S.W.2d 637, 640 (Tex. App.—Beaumont 1997, pet. denied). The question is not whether the summary judgment proof raises fact issues with reference to elements of a claim or defense but whether the summary judgment proof establishes or disproves the elements of a claim or defense as a matter of law. *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). In this case, we must accept uncontroverted summary judgment evidence on ownership of the pickup as true; Dean testified that he and McGuffin were co-owners of the pickup. Therefore, under the policy,

7

Dean is an owner of the pickup and a family member of Anderson, but McGuffin also is an owner.

*D. Uninsured Motor Vehicle*

Having determined that Dean is a family member and at least a partial owner of the pickup, we now look to see if the pickup is an uninsured motor vehicle. In the policy, "[u]ninsured motor vehicle" is defined, in part, as "a land motor vehicle or trailer of any type . . . [t]o which no liability bond or policy applies at the time of the accident." In addition, the policy explicitly excludes from the definition of uninsured motor vehicle any vehicle that is "[o]wned by or furnished or available for the regular use of you or any family member." The uninsured motorist provision of the policy has been found to be valid and enforceable. *Scarborough v. Emp'rs Cas. Co.*, 820 S.W.2d 32 (Tex. App.—Fort Worth 1991, writ denied). Texas Farm Bureau had the burden of proof to show that the pickup was an uninsured vehicle. TEX. INS. CODE ANN. § 1952.109 (West 2009); *see also Wiley v. State Farm Mut. Auto. Ins. Co.*, No. 03-98-00115-CV, 1999 WL 176046 (Tex. App.—Austin Apr. 1, 1999, no pet.) (not designated for publication).

Again, taking the uncontroverted summary judgment evidence as true, Dean testified that he did not insure the pickup but that he had possession, use, and partial ownership of the pickup. *See Lowery*, 952 S.W.2d at 640. Dean also said that he lived at his father's house and kept the pickup there. Anderson testified that the pickup was not a scheduled vehicle on his policy; that policy was adduced as evidence. Dean claimed that the pickup was covered by McGuffin. But no such policy of insurance was submitted as evidence. We will assume, in taking all inferences in favor of the nonmovant, that no policy of insurance covered the pickup.

8

*E. Application of Exclusion*

The next step is to determine how to apply the A.1 Exclusion. Under the plain language of that provision, the pickup, even without a policy of insurance covering it, is not an uninsured vehicle if Dean owned it or had it available for his regular use. What remains to discern is whether the exclusion applies where McGuffin also owned the pickup.

Texas Farm Bureau argues that Anderson cannot recover under his UM coverage because Anderson was injured by a family member's vehicle that Anderson did not schedule on his own policy. Texas Farm Bureau cites several cases in support of its position. *Holyfield v. Members Mut. Ins. Co.*, 572 S.W.2d 672 (Tex. 1978) (owner precluded from PIP coverage from injury incurred while riding owner's unscheduled motorcycle); *Armendariz v. Progressive Cnty. Mut. Ins.* Co., 112 S.W.3d 736, 739 (Tex. App.—Houston [14th District] 2003, no pet.) (elderly parents lived with adult child; parents' van dropped as a scheduled vehicle, and later parent killed in accident involving van; no UM coverage because unscheduled vehicle); *Conlin v. State Farm Mut. Auto. Ins. Co.*, 828 S.W.2d 332, 334–37 (Tex. App.—Austin 1992, writ denied) (eighteen-year-old daughter buying American Motors Concord from mother, but Concord not scheduled on mother's policy; no UM/UIM coverage when daughter killed riding as a passenger in Concord, which was being permissibly driven by underinsured third party); *Tex. Farmers Ins. Co. v. McKinnon*, 823 S.W.2d 345, 347 (Tex. App.—Beaumont 1991, writ denied) (owner injured in her Mercury Grand Marquis when struck by underinsured driver; no UM/UIM coverage where Grand Marquis not scheduled vehicle); *Berry v. Tex. Farm Bureau Mut. Ins.* Co., 782 S.W.2d 246, 246–47 (Tex. App.—Waco 1989, writ denied) (owners injured by uninsured driver while they were in their Monte Carlo, which was only listed as scheduled vehicle on one of two insurance policies; no UM coverage on policy where vehicle unscheduled);

9

*Beaupre v. Standard Fire Ins. Co.*, 736 S.W.2d 237, 237–39 (Tex. App.—Corpus Christi 1987, writ denied) (minor child injured while riding in mother's Bronco when Bronco struck by underinsured motorist, but UIM denied because Bronco not scheduled vehicle); *Equitable Gen. Ins. Co. v. Williams*, 620 S.W.2d 608, 608–11 (Tex. App.—Dallas 1981, writ ref'd n.r.e.) (owner riding his motorcycle injured by uninsured driver, but UM coverage denied because owner's motorcycle was not scheduled vehicle).

Two of the cases cited by Texas Farm Bureau, *Conlin* and *Armendariz*, are family member cases where the unscheduled vehicle was possessed or owned by the family member. *Conlin*, 828 S.W.2d at 334–37; *Armendariz*, 112 S.W.3d at 739. In *Conlin*, the vehicle in question was actually owned by the mother, but possessed and driven by the teenage daughter, who was killed in an accident involving the unscheduled vehicle being permissively driven by an underinsured driver. *Conlin*, 828 S.W.2d at 334–37. In *Armendariz*, the van involved in the accident that killed one of the elderly parents, who resided with their adult child, had been a scheduled vehicle, but coverage was dropped when the van was offered for sale; the accident occurred shortly thereafter. *Armendariz*, 112 S.W.3d at 739. But *Conlin* and *Armendariz*, as well as all of the other cases cited by Texas Farm Bureau, did not involve a thief taking a vehicle and did not involve the situation where the unscheduled vehicle was owned by a stranger as well as a family member of the insured.

Anderson relies on two cases to support his position that he can recover under his UM coverage and argues that we have to follow a case-by-case public policy analysis on the exclusion in his coverage, as was done in *Briones* and *Fontanez*. *Briones v. State Farm Mut. Auto. Ins. Co.*, 790 S.W.2d 70, 73–74 (Tex. App.—San Antonio 1990, writ denied); *Fontanez v. Tex. Farm Bureau Ins. Cos.*, 840 S.W.2d 647, 649–50 (Tex. App.—Tyler 1992, no writ). *Briones* and *Fontanez*

outline two situations where recovery under UM provisions was allowed. In *Briones*, Briones, the insured, was asleep in a tractor-trailer that was owned by his employer, but the trailer was not insured by the employer or Briones, and the truck was being driven by another employee, who was not insured. *Briones*, 790 S.W.2d at 73–74. Briones was injured when the tractor-trailer was involved in an accident. *Id.* Briones sought coverage under his UM policy, but coverage was denied because the tractor-trailer was furnished for his use, by his employer, to drive hauling loads. *Id.* After the trial court agreed with Briones's insurer, Briones appealed. *Id.* The appellate court held that, although the tractor-trailer fell within the exclusion, the unique facts of the case operated to frustrate the purpose of the uninsured motorists coverage, which was to protect Briones from uninsured owners and operators like his irresponsible employer and its driver. *Id.*

In *Fontanez*, the insured was killed when she was struck by the door of her own car when a thief attempted to steal it. *Fontanez*, 840 S.W.2d at 647–50. The insured's estate sought to recover under her UM benefits, which the trial court denied because the insured's vehicle was covered under the policy and, therefore, was not an uninsured vehicle. *Id.* Again, the court of appeals recognized that the exclusion applied, but inquired, citing *Briones*, as to whether the exclusion contravened the legislative intent of UM coverage. *Id.* The court of appeals in *Fontanez* held that the insured's estate was allowed to recover under her UM benefits because, like Briones, she probably would not have recognized or appreciated that the exclusion barred her recovery when she was injured by her own vehicle after a thief stole it. *Id.*

We note that *Fontanez* relied on the reasoning in *Briones* and that several courts have declined to follow the public policy analysis on exclusions for UM coverage because such exclusions are valid and enforceable. *Armendariz*, 112 S.W.3d at 739; *Conlin*, 828 S.W.2d at 334–37; *see, e.g.*, *Holyfield*, 572 S.W.2d at

11

673; *McKinnon*, 823 S.W.2d at 347; *Moore v. State Farm Mut. Auto. Ins. Co.*, 792 S.W.2d 818, 820–21 (Tex. App.—Houston [1st Dist.] 1990, no writ) (injured family member not allowed to recover on parent's policy because he owned vehicle involved in accident, which was unscheduled on parent's policy); *Berry*, 782 S.W.2d at 247; *Beaupre*, 736 S.W.2d at 239; *see also Doughten v. State Farm Mut. Auto Ins. Co.*, 31 F. App'x 839 (5th Cir. 2002) (insured not allowed to recover for injuries sustained while riding in family member's unscheduled vehicle); *Am. Econ. Ins. Co. v. Tomlinson*, 12 F.3d 505, 509 (5th Cir. 1994) (exclusion for owned by unscheduled car valid) (citing *Conlin*, 828 S.W.2d 332); *Layton v. Mid-Century Ins. Co. of Tex.*, 18 S.W.3d 308, 309 (Tex. App.—Beaumont 2000, no pet.) (owned but unscheduled vehicle exclusion valid for medical payments coverage); *Frazer v. Wallis*, 979 S.W.2d 782, 784 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (exclusion barred recovery under UIM coverage for injury in owned but unscheduled vehicle); *Reyes v. Tex. All Risk Gen. Agency, Inc.*, 855 S.W.2d 191, 192 (Tex. App.—Corpus Christi 1993, no writ) (injured child cannot recover under UIM for injury that occurred in family member's owned but unscheduled vehicle). *But see Verhoev*, 300 S.W.3d at 817 (UIM coverage for insured, who was injured while riding in her ex-husband's vehicle, was allowed).

*Briones* and *Fontanez* are distinguishable from the facts in Anderson's case. We recognize that Anderson's situation is similar to *Briones* in that McGuffin and Mark are like the uninsured employer and employee in *Briones*. But unlike Anderson, Briones was a fleet truck driver and could not have been expected to list every vehicle that his employer had in its fleet. Likewise, we note the similarity of Anderson's situation to *Fontanez* in which a thief stole a car and struck and killed the insured in the process of the theft. But unlike *Fontanez*, Anderson was struck

by a vehicle that was excluded from coverage and was not covered under his policy, whereas the car in *Fontanez* was a covered vehicle of the deceased insured.

Although Anderson was injured by an employee of McGuffin, who drove the pickup without Dean's authorization, the pickup also was owned by Dean, a family member, and was not a covered vehicle under Anderson's policy. These two facts, Dean's ownership of the pickup and the pickup's status as an unscheduled vehicle under Anderson's policy, distinguish Anderson's case from *Briones* and *Fontanez.* Anderson's case is similar to *Armendariz* and *Conlin* where UM/UIM coverage was denied because the vehicles were unscheduled and owned by family members. *Armendariz*, 112 S.W.3d at 739; *Conlin*, 828 S.W.2d at 334–37. In both of those cases, ownership of the vehicle and its failure to be listed on the policy precluded coverage. Moreover, even if Dean had not owned the vehicle, the uncontroverted evidence was that the vehicle was available for his regular use, which also would have precluded coverage.

Because Anderson did not list the pickup on his policy and because Dean, a family member, owned or had use of the pickup, Exclusion A.1 applies. As a result, Anderson is precluded from recovery under the UM provision of his policy. We overrule Anderson's sole issue on appeal.

V. <em>This Court's Ruling</em>

We affirm the judgment of the trial court.

July 24, 2014                                        MIKE WILLSON

Panel consists of: Wright, C.J.,                    JUSTICE
Willson, J., and McCall.[2]

Bailey, J., not participating.

---

[2]Terry McCall, Retired Justice, Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.